**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**NATIONAL CASH REGISTER COMPANY.**

**No. C75–284A.**

United States District Court, N. D. Georgia, Atlanta Division.

Dec. 8, 1975.

Roger J. Martinson, Regional Attorney, Equal Employment Opportunity Commission, Atlanta, Ga., for plaintiff.

Donald B. Harden (Fisher & Phillips), Atlanta, Ga., for defendant.

## ORDER

MOYE, District Judge.

This Title VII enforcement action by the EEOC under Section 706(f)(1) and (3) and (g) alleges that the defendant, National Cash Register Company [NCR], violated Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a) and § 2000e–3(a) by discriminating against women with respect to discharges, maternity leave policies and terms and conditions of employment. The case is presently before the Court on the defendant's motion to dismiss or in the alternative for summary judgment, filed March 14, 1975. The plaintiff opposes the motion.

The facts are as follows: The only employee charge related to this EEOC action was filed by Mrs. Beverly Hungerford on September 2, 1970. (See Exhibit # 1 to defendant's brief.) Mrs. Hungerford made two charges: (1) that she was discharged during a reduction-in-force while she was on maternity leave in violation of the sex discrimination prohibitions of the Act; (2) that she was paid lower wages for comparable work than a male who worked in her department.

The EEOC conducted an investigation of Mrs. Hungerford's charge beginning January 4, 1971. On October 29, 1973, the Atlanta District Director, Mr. Thomas McPherson, Jr., issued a Determination of Reasonable Cause (Exhibit 2 to defendant's brief). The Determination reached two conclusions: (1) that there was reasonable cause to believe that Mrs. Hungerford's discharge constituted a violation; and (2) that there was no support for Mrs. Hungerford's allegations of disparate wages. No further issues were raised or discussed.

The Determination found the following on the basis of undisputed facts: Mrs. Hungerford went on maternity leave in May 1970, pursuant to defendant's policies. The defendant instituted a reduction-in-force two months later in July 1970 while Mrs. Hungerford was still on leave. The defendant told Mrs. Hungerford at the end of August 1970, when she was scheduled to return from leave, that she had been terminated in a reduction-in-force. Of the ten persons terminated in the reduction, nine were male.

The defendant has moved to dismiss or for summary judgment on five grounds discussed hereafter:

I. *The Complaint raises issues which have not been the subject of the statutorily required EEOC investigation, determination and conciliation.*

The defendant argues that the Court lacks subject matter jurisdiction in this statutory proceeding because the defendant has not had an opportunity to engage in voluntary conference, persuasion and conciliation with the EEOC respecting the allegations in this broad-based

complaint. Defendant argues that although Mrs. Hungerford's charge and the EEOC's investigation, conciliation efforts and reasonable cause determination were limited to Mrs. Hungerford's termination while on maternity leave and her claimed alleged wage disparity, the EEOC's complaint in the instant action goes well beyond the administrative action below to broadly allege that NCR has engaged in unspecified "unlawful employment practices" against women including but not limited to discharging an unknown number of female employees because of their sex, discrimination against females in terms and conditions of employment, and maintaining an unlawful maternity leave policy. Since the instant claims were never the subject of investigation, a reasonable cause determination and conciliation efforts by the EEOC, the defendant alleges that the EEOC has thereby failed to fulfill the several statutorily mandated conditions precedent to bringing a broad-based case like the instant action, and therefore the case should be dismissed.

The instant action is a statutory action. The Act, in explicit language requires the mandatory performance of the following actions before suit may be brought in the District Court: (1) The service of a *charge* or notice of filing of charge on the charged party, (2) the *investigation* of the charge; (3) the *determination* of whether, based on the results of the investigation, there is *reasonable cause* to believe the charge is true, and (4) if reasonable cause is found, an attempt to eliminate allegedly unlawful practices by *conciliation*. 42 U.S.C. §§ 2000e–5(b), 2000e–5(f)(1).

█ That these conditions precedent must be performed in their requisite order was the holding of the District Court in *EEOC v. Container Corp. of America*, 352 F.Supp. 262 (M.D.Fla.1972), in which Judge Tjoflat stated:

The Court views *each* one of the deliberate steps in this statutory scheme—charge, notice, investigation, reasonable cause, conciliation—as intended by Congress to be a *condition precedent* to the next succeeding step and *ultimately legal action*. Certainly, the EEOC does not contend that it could skip one or more of these steps at will. The language of the Act is mandatory as to each step and the Commission must complete each step before moving to the next.

* * * * * *

The Court concludes that the question of the EEOC's satisfaction of the *statutory conditions precedent to suit* is a proper and indeed a *necessary subject of judicial inquiry.* . . . (Emphasis supplied) 352 F.Supp. 265–66

See similar language in *EEOC v. E. I. DuPont de Nemours and Co., etc.*, 373 F.Supp. 1321, 1336 (D.Del.1974):

As this opinion has earlier stressed, each step in the Commission's administrative process is designed to be a prerequisite to the following step and, ultimately, to suit. Congress, committed as it was to voluntary compliance, could not have intended that the Commission could attempt conciliation on one set of issues and, having failed, litigate a different set. . . .

Judge Tjoflat's treatment in *EEOC v. Container Corp. of America* of these conditions prerequisite to an EEOC suit has been supplanted by the Fifth Circuit's opinion in *EEOC v. Standard Forge & Axle Co., Inc.*, 496 F.2d 1392 (5 Cir. 1974), which held that as a pleading matter under Fed.R.Civ.P. 9(c), it was sufficient for the EEOC to aver generally that "all conditions precedent to the institution of the lawsuit have been fulfilled." See *EEOC v. Times-Picayune Publishing Corp.*, 500 F.2d 392 (5 Cir. 1974). The Fifth Circuit, however, left open the extent of the district court's inquiry into the EEOC's fulfillment of conditions precedent to bringing suit:

What may or may not be conditions precedent to the Commission's right to seek judicial redress of a Title VII grievance, cf. *Sanchez v. Standard Brands, Inc.*, 5 Cir. 1970, 431 F.2d 455; *Miller v. International Paper Co.*, 5 Cir. 1969, 408 F.2d 283; *Dent v. St.*

*Louis-San Francisco Railway Co.,* 5 Cir. 1969, 406 F.2d 399, cert. denied, 1971, 403 U.S. 912, 91 S.Ct. 2219, 29 L.Ed.2d 689, must be determined by the district court after the issue is properly presented under the rules of pleading. 496 F.2d at 1395.

In the present case, the question of EEOC fulfillment of conditions precedent is squarely presented by the defendant's motion for summary judgment and supporting exhibits and the EEOC's response. Consequently, *EEOC v. Standard Forge & Axle Co., Inc.,* supra, constitutes no bar to the Court's consideration of this issue at this time.

The test for determining the scope of an individual's Title VII complaint, which stems from an initial charge before the EEOC is well-settled. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5 Cir. 1970).

*Sanchez* decided that the scope of the judicial complaint in a Title VII case:

. . . is limited to the "scope" of the EEOC *investigation* which can reasonably be expected to grow out of the charge of discrimination. (emphasis supplied) (431 F.2d 455).

See also *Tipler v. E. I. duPont de Nemours, Inc.,* 443 F.2d 125 (6 Cir. 1971), and *King v. Georgia Power Co.,* 295 F.Supp. 943 (N.D.Ga.1968).

■ The focus in *Sanchez* was on the EEOC investigation. In other words, where the EEOC's investigation of an individual's EEOC charge reveals unlawful employment practices which could be reasonably expected to be uncovered during the EEOC investigation, and are "like or related to" those alleged in the original charge, the judicial complaint may encompass these additional alleged unlawful employment practices.

Conversely, the judicial complaint may not allege unlawful employment practices, which were the subject neither of the EEOC's investigation, *Sanchez v. Standard Brands, Inc.,* supra, nor of its "reasonable cause" determination. *EEOC v. E. I. DuPont de Nemours and Co., etc.,* 373 F.Supp. 1321 (D.Del.1974).

That the scope of the EEOC's investigation and "reasonable cause" determination may *not* be widened in a subsequent judicial complaint, whether suit is brought by a private citizen or the EEOC, is supported by *EEOC v. E. I. DuPont, supra,* and *EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453 (5 Cir. 1975).

In *DuPont, supra,* the District Court adopted the *Sanchez* rule in determining the permissible scope of the EEOC's proceedings in relation to the scope of the employee's EEOC charge. 373 F.Supp. at 1335–36. In discussing the scope of the judicial complaint in relation to the scope of the EEOC proceedings, the *DuPont* Court adopted the rule that the judicial complaint may only encompass those issues falling within the Commission's "reasonable cause" determination:

Although the Parker charge gave the Commission authority to investigate the full range of employment practices encompassed by its determination of reasonable cause, it is a separate question whether the Commission is now entitled to litigate all of the issues framed by its complaint filed in this Court . . . Since the determination of reasonable cause defines the framework for conciliation, it follows that the issues to be litigated here must be those which can fairly be said to be encompassed within the determination resulting from the Parker charge. 373 F.Supp. at 1336.

In *EEOC v. Huttig Sash & Door Co., supra,* the Fifth Circuit held that, notwithstanding the complaining employee's subsequent settlement of his suit with the company, the EEOC could still proceed alone against the company in a judicial complaint alleging grounds other than those urged by the complaining employee, where these additional grounds developed from the EEOC investigation, and were subjects of the reasonable cause determination and conciliation efforts.

In *DuPont, supra,* and *Huttig,* the courts held that the judicial complaint could only encompass employee charges

which had undergone complete administrative processing by the Commission, including investigation, decision of reasonable cause and conciliation. See also *EEOC v. Raymond Metal Products Co.*, 385 F.Supp. 907 (D.Md.1974), holding:

> Thus, an examination of the policy considerations behind the *Sanchez* rule convinces this Court that the judicial complaint in an EEOC civil action may properly embrace, in addition to those allegations contained in the initial charge, any allegation of other discriminatory employment practices for which there has been an investigation, a determination of reasonable cause, and a genuine attempt at conciliation. [385 F.Supp. at 915]

■ In the instant case, it is uncontroverted that the only issues which were actually investigated, raised in the reasonable cause determination and conciliated, were those concerning Mrs. Hungerford only.

To allow this complaint to proceed as presently drawn would deprive NCR of the opportunity to conciliate allegations of unlawful discrimination without resorting to burdensome and expensive litigation.

■ An EEOC lawsuit, brought before the defendant has had a chance to voluntarily settle the issues, is premature. *EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8 Cir. 1974); *EEOC v. Westvaco Corp.*, 372 F.Supp. 985, 998–991 (D.Md.1974); *EEOC v. E. I. DuPont de Nemours & Co.*, 373 F.Supp. 1321, 1333–34 (D.Del.1974).

■ Voluntary settlement of Title VII *actions is an important goal of the statutes* which the Court will not preclude to the defendant. The Fifth Circuit has held many times that Title VII should receive a liberal construction while at all times bearing in mind that the central theme of Title VII is "private settlement" as an effective end to employment discrimination. *Culpepper v. Reynolds Metals Company*, 421 F.2d 888 (5 Cir. 1970). In *Oatis v. Crown Zellerbach*, 398 F.2d 496 (5 Cir. 1968), the Court held:

> It is thus clear that there is great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation.

This view was again voiced in *Jenkins v. United Gas Corporation*, 400 F.2d 28 (5 Cir. 1969), where the court stated that:

> . . . EEOC whose function is to effectuate the Act's policy of voluntary conference, persuasion and conciliation as the principal tools of enforcement.

Inasmuch as NCR has been deprived thus far of its opportunity of "voluntary conference, persuasion and conciliation" with respect to those issues lying outside the EEOC's "reasonable cause" determination of October 29, 1973, which concerned only Mrs. Hungerford, this Court will not take cognizance of the "non-Hungerford" claims at this time.

Accordingly, the Court hereby orders the scope of the instant complaint limited to only the consideration of Mrs. Hungerford's claim that she was discharged in a reduction-in-force in August, 1970.

II. *There is an illegal subdelegation of authority to the EEOC District Directors which, in the absence of any provision for administrative review, warrants dismissal.*

■ The defendant brings a claim patterned on the district court's decision in *EEOC v. Raymond Metal Products Company*, 385 F.Supp. 907, 8 FEP Cases 1199 (D.Md.1974), which dismissed an EEOC complaint on the grounds that the five-man Equal Employment Opportunity Commission had illegally subdelegated to the EEOC District Directors under 29 C.F.R. § 1601.19b(d) the power to (1) make a determination of "reasonable cause," and (2) make a determination that conciliation has failed; and subdelegated to the EEOC Regional Litigation Center the power to make a determination to bring suit all without any opportunity for administrative review of these

determinations which are "final when issued." § 1601.19b(d).

The defendant claims that these functions are vested solely in the five-man Commission, 42 U.S.C. § 2000e–5(b), because they require the exercise of substantial discretion and judgment and are not merely ministerial or mandatory in nature.

The defendant argues against the legality of this subdelegation and states that, in the alternative, it is illegal because these determinations are "final when issued" and there is no opportunity for review by an interested party. *EEOC v. Raymond Metal Products Co., supra,* 29 C.F.R. § 1601.19b(d).

To show the illegality of subdelegation in the instant case, the defendant argues from two analogous cases where the Supreme Court held the subdelegation of powers illegal. *Cudahy Packing Co. v. Holland,* 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895 (1942) (under Fair Labor Standards Act, the Administrator of the Wage-Hour Division, U. S. Department of Labor, may not delegate to regional directors his statutory authority to issue subpoenas), and *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (the Attorney General's power to authorize wiretap applications under Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, 2516, was *not* delegable).

The plaintiff disputes the defendant's claim that the EEOC has delegated to the Regional EEOC Litigation Center the decision to bring suit:

. . . This is a misconception. The Commission has never delegated to anyone, not even the General Counsel, the right to determine whether to bring a civil action. No action is brought unless it is authorized by a majority vote of the Commission taken at a Commission meeting after the Commission has before it the full administrative record as well as the recommendations of the General Counsel.

Concerning the power of the District Director to make, under 29 C.F.R.

§ 1601.19b(d), a reasonable cause determination and a determination that conciliation has failed, the plaintiff argues that there is no requirement that these decisions be administratively reviewable because they are merely nonadjudicatory intermediate decisions in the Commissions' administrative process. See *National Labor Relations Board v. Duval Jewelry Co.,* 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958); *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 598–99, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

Although Judge Northrop's opinion in *EEOC v. Raymond Metal Products Co.* is cogent and well-reasoned in its holding that the challenged subdelegation of authority by the EEOC without review is illegal, this Court rejects that holding and joins Judge Russell and adopts his memorandum decision in *EEOC v. MFC Services,* 10 FEP Cases 942 (S.D.Miss., March 20, 1975), wherein he entertained a similar challenge and stated as follows:

The defendant bases this motion to dismiss on the holding in *EEOC v. Raymond Metal Products Co.* [385 F.Supp. 907], November 26, 1974, wherein Chief Judge Edward S. Northrop, U. S. District Court of Maryland, found the challenge to EEOC regulation 29 C.F.R. § 1601.19b(d) well taken, inasmuch as the subdelegated authority to EEOC District Directors to make a determination of reasonable cause for believing that a respondent had engaged in unlawful employment practices failed to provide for a review of the District Director's determination. Judge Northrop found no provision in Title VII of the agency's internal regulations mandating a review by the Commission before the institution of a civil suit. More importantly, the Judge criticized the subdelegation to a District Director of determining the success or not of an acceptable conciliation agreement. This finding followed the Judge's earlier conclusion that the Commission has the power to subdelegate the mandatory administra-

tive procedures prescribed by 42 U.S.C. 2000e–5(b), but only if review procedures are provided for.

The government's response to this motion is that, since no rights are adjudicated by these administrative determinations, the action in the district courts being for a trial de novo, there is no requirement for an administrative review. Further, the government contends that the Commission has not delegated to any one the right to determine whether to bring a civil action, that determination being reserved to itself. Although the government has offered no EEOC case holding contrary to Judge Northrop's decision, i. e., that the referred to regulation is fatally defective, this Court adopts what it hopes will be the majority rule, and finds, aside from this particular regulation, that the Congress must have recognized that the five-member Commission could not and cannot make all administrative decisions itself, and, in the absence of procedures for administrative review in the statutory language, none are required. However, should Judge Northrop be upheld in his view, this Court, at that time, will certainly entertain a renewed motion to dismiss. See also *EEOC v. Air Guide Corp.*, 395 F.Supp. 600 (S.D.Fla.1975) and *Chung v. Morehouse College*, Civ. No. C75–110A (N.D.Ga., Judge Edenfield, decided December 5, 1975).

III. *The action is based on EEOC procedures promulgated in secret or not in accordance with the Administrative Procedure Act.*

█ The defendant claims that the EEOC has made numerous changes in its administrative regulations in contravention to the Administrative Procedure Act [APA]. The dispute between the parties over the applicability of the APA to EEOC regulations centers on whether these regulations are "procedural" or "substantive" in nature.

Section 713 of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–12 expressly provides:

The Commission shall have authority from time to time to issue, amend or rescind suitable *procedural regulations* to carry out the provisions of this subchapter. Regulations issued under this section shall be in conformity with the standards and limitations of the Administrative Procedures Act. (emphasis added)

Section 553 of the Administrative Procedure Act is the provision delineating the notice, opportunity-to-comment, and delay-in-implementation requirements for agency promulgation of rules and regulations. 5 U.S.C. § 553. However, § 553 exempts the following from its requirements:

. . . Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, *or rules of agency organization, procedure, or practice* . . . (emphasis supplied)

The defendant claims that prior EEOC rulemaking with respect to (1) the respondent's opportunity to review and point out errors in facts upon which an EEOC determination would be based, and (2) the respondent's opportunity to demand that the EEOC issue a right-to-sue letter to the charging party before Commission processes were concluded was "substantive," not "procedural" in nature and therefore failed to comport with the requirements under § 553 of the Administrative Procedure Act. Defendant claims that the instant suit should be dismissed because the EEOC is operating under invalid regulations. See *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir. 1972).

The plaintiff's argument is that the EEOC is empowered to issue only "suitable procedural regulations," *Dobbins v. Local 212*, 292 F.Supp. 413, 449 (S.D.Ohio 1968), and the challenged regulations

neither afforded nor infringed any substantive right of respondent. They merely represent experimentation and change in order to better carry out the Commission's statutory duties. See *Chromecraft v. EEOC*, 465 F.2d 745 (5 Cir. 1972).

Specifically, the defendant challenges two EEOC regulations:

The first challenged regulation provided parties before the Commission, from February 19, 1970, until May 27, 1972, with an opportunity to review the facts upon which a determination would be based, and where there was plain error, to point that error out. 35 Fed.Reg. 3163 (February 19, 1970), as amended, 35 Fed.Reg. 10110 (June 19, 1970):

> § 1601.19a *Field Director's findings of fact.*
>
> Upon completion of an investigation, the Field Director will cause to be prepared and served upon the parties his findings of fact in the case, which shall contain findings of fact and a summary of the evidence upon which such findings are based.
>
> § 1601.19b *Exceptions to Field Director's findings of fact.*
>
> (a) Within fifteen (15) days, . . . the parties may file such exceptions to the Field Director's findings of fact, objections, briefs and evidence in support thereof as they may desire. When requested by a person not represented by counsel, assistance in the preparation of exceptions to the Field Director's findings of fact will be provided by personnel in the Field Office as deemed practicable by the Field Director.

Thus, the parties had an opportunity to review the factual basis of the initial determination that the respondents named in the charge had or had not violated the Act.[1] However, on September 27, 1972, 37 Fed.Reg. 20165, the Commission rescinded this provision, and provided only for the issuance of a determination of reasonable cause. This revocation had the effect of allegedly denying the defendant herein knowledge of the evidence upon which the determination of reasonable cause was based and an opportunity to point out errors or omissions in proposed findings and ask for their correction.

The second challenged regulation once provided that respondents could require the EEOC to issue a right-to-sue notice to the charging party, thereby permitting a prompt resolution of the issue in court, 29 C.F.R. § 1601.25 (1970), as amended, 35 Fed.Reg. 3164 (February 18, 1970):

> . . . (c) At any time after the expiration of sixty (60) days from the date of the filing of the charge, . . . or upon the expiration of the time for filing objections to dismissal by the Field Director pursuant to Section 1601.19, . . . the respondent may demand in writing that a notice issue pursuant to 1601.25 and the Commission shall promptly issue such notice, with copies to all parties.
>
> (d) Issuance of notice pursuant to paragraph (c) of this section shall suspend further Commission proceedings unless the Field Director determines that it is in the public interest to continue such proceedings, or unless within twenty (20) days after receipt of such notice, a party requests the Field Director, in writing, to continue to process the case.

However, on February 5, 1971, at 36 Fed.Reg. 2506, the Commission amended the regulation and withdrew from respondents the right to accelerate the placement of the case in the hands of the charging party. The Commission stated at that time, as it continues to

---

1. Defendant notes that, as initially promulgated, Section 1601.19 provided that the finding of fact would contain "the evidence upon which such findings are based." Apparently, this was too detailed, and permitted respondent and charging party greater insight to why a particular result was reached. Accordingly, on June 19, 1970, at 35 Fed.Reg. 3163, the Commission amended its previous regulation to provide that the Field Director need only provide "a summary of" the evidence upon which findings were based.

maintain in this suit, that these changes were procedural in nature and for this reason were exempt from the procedures set out by § 553 of the Administrative Procedure Act:

> Because the amendments herein adopted are procedural in nature, the privileges of Section 4 of the Administrative Procedure Act . . . for public notice and delay in effective date are inapplicable. This amendment shall become effective upon publication in the Federal Register, and shall be applicable with respect to all parties for notices of right to sue after such date. (36 Fed.Reg. 2506, February 5, 1971)

The defendant claims that these regulations deprived it of the substantial right of (1) commenting and objecting to the factual basis of the EEOC's determination and (2) placing "the issue into the hands of the charging party in order that he may bring suit, thereby giving respondents an opportunity of avoiding the almost ludicrous delay such disputes have suffered at the hands of the Commission. . . ." The defendant vigorously disputes the EEOC's characterization of these changes as merely "procedural" in nature. The defendant contends that the "procedural" characterization should be determined not by the label affixed by the agency, but by considering whether the agency action has a "substantial impact" on rights or obligations of affected persons:

> While the Secretary strenuously argues that he was merely announcing "a general statement of agency procedure or practice" . . ., the label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact. [*Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 481–82 (2 Cir. 1972)] [2]

The plaintiffs argue that there is no automatic right of the respondent to comment on the factual basis of an EEOC charge or to elect to place the complaint in the hands of the charging party for earlier judicial determination. The plaintiff states that the EEOC is not an adjudicatory body. Its function is purely investigative and fact finding. It does not hold trial or determine civil or criminal liability. It does not issue orders, nor does it indict, punish or impose legal sanctions. It does not make determinations depriving anyone of life, liberty or property. The function of the EEOC is to obtain voluntary compliance or, if that fails, to issue a letter of determination and file a civil action in district court under Section 706(f)(1). The civil action is a trial of the facts *de novo*. The federal judiciary is the only entity empowered to enforce compliance with Title VII. *Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136, 1141 (5 Cir. 1971).

Since the EEOC action is not an "adjudication" under 5 U.S.C. § 551(7) (*i. e.*, "agency process for the formulation of an order"), and the EEOC's limited power to issue a letter of determination and file a civil suit does not raise the administrative procedure to the substantive stature of a legal finding or a final order as with the National Labor Relations Board, the Court fails to see how substantive rights of the respondents were prejudiced or infringed by the Commission's change in regulations.

Title VII is a new statute. Since 1965 the Commission has considered, adopted, and rejected many techniques by which it could effectively implement findings of reasonable cause. The Fifth Circuit has sanctioned agency flexibility in fulfilling its statutory mandates, as evidenced by *Chromecraft v. EEOC*, 465 F.2d 745 (5 Cir. 1972): In *Chromecraft* the respondent sought nullification of agency action based on the delay of

---

**2.** See also *Nader v. Butterfield*, 373 F.Supp. 1175 (D.D.C.1974), and *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (D.C.Cir.1974), for the proposition that "procedural" regulations that substantially affect the rights of those over whom the agency exercises authority are not exempt from the Administrative Procedure Act.

EEOC in serving the charge. The court in reviewing Section 706 of the Administrative Procedures Act concluded that there was no statutory regulation in existence at the time of the action which established a time limitation and, further, that no prejudice had been shown by the defendant by the delay of EEOC in not serving the charge.

In the setting of such exacerbated circumstances, "agencies must exert resourceful, imaginative ingenuity in devising procedures which in a day of ever-expanding dockets will permit the regulatory process to function properly, with reasonable dispatch." *F. T. C. v. J. Weingarten, Inc.,* 5 Cir., 1964, 336 F.2d 687, 691–92.

. . . . .

The EEOC had to resort to other means to satisfy its statutory obligation to protect congressionally created rights. One technique intended to accomplish this objective was the policy involved here—the procedure of not serving the charges upon the respondent until the investigation was imminent. Whether or not that policy was successful, desirable or wise, we need not—indeed cannot—determine here. So long as the policy "seeks only to accomplish legitimate objectives," Cf. *Karr v. Schmidt,* 5 Cir. (en banc), 1972, 460 F.2d 609, 617, we cannot declare it unreasonable. [465 F.2d at 748.]

The challenged regulations here are procedural, dealing with the Commission's handling of its own business. See *Kessler v. F. C. C.,* 117 U.S.App.D.C. 130, 326 F.2d 673 (1963):

Substantive rules are those which change standards . . . and procedural rules are those dealing with the method of operation utilized by the Commission in the dispatch of its business . . . [326 F.2d at 680]

See also *Ranger v. F. C. C.,* 111 U.S.App. D.C. 44, 294 F.2d 240, 244 (1961):

Of course all procedural requirements may and do occasionally affect sub-stantive rights, but this possibility does not make a procedural regulation into a substantive one.

The Commission has latitude in its discretion to set up its own procedures. The Court holds that the EEOC's decision whether or not to allow a respondent to comment on the factual basis of a proposed charge and to permit the respondent to accelerate the placement of the case in the hands of the charging party relate to the EEOC's procedures and therefore were exempt from the requirements of § 553 of the Administrative Procedure Act.

■ The defendant claims that the EEOC has adopted procedures in secret "without even taking the trouble to publish them." Specifically, prior to March 15, 1974, the five-man EEOC had the exclusive authority to issue "right-to-sue" letters, 29 C.F.R. § 1601.19d(e), yet the practice of the EEOC was to have district directors issue right-to-sue letters.

In *McDonald v. General Mills, Inc.,* 387 F.Supp. 24 (E.D.Cal., 1974), the Court condemned that procedure, holding that such unpublished delegation of authority was not consistent with the Administrative Procedure Act. On March 10, 1974, the EEOC announced that it had "ratified" the acts of the district directors in issuing such notices, which practice began October 19, 1969. 39 Fed.Reg. 10123, 10178. The defendant claims that the EEOC disregarded the requirements of Title VII and of the Administrative Procedure Act by simply "ratifying," *ex post facto,* illegal acts.

The Court notes, however, that this "ratification" has been held to have cured the prior defect, *Lambert v. Sperry Rand,* 8 FEP Cases 1170 (N.D.La. 1974). The *Lambert* case was predicated on Fifth Circuit authority on agency "ratification" and this Court therefore will follow *Lambert* and hold that the ratification cured the defect.

Accordingly, defendant's challenges predicated on the Administrative Procedure Act are overruled.

**IV.** *The action is untimely since it is barred by the 180-day limitation period of Title VII and the Georgia two-year statute of limitations.*

■ The defendant's first claim is that Congress intended to cut off the EEOC's right to bring a lawsuit 180 days after the filing of the EEOC charge. 42 U.S.C. § 2000e–5(f)(1). This claim was specifically rejected by the Fifth Circuit in *EEOC v. Louisville & Nashville R.R. Co.,* 505 F.2d 610 (5 Cir. 1975), which held that there was no such limitation on Commission action. *EEOC v. Griffin Wheel Co.,* 511 F.2d 456 (5 Cir. 1975).

The defendant's second claim is that the instant civil rights action is barred by Ga.Code Ann. § 3–704 which provides that all actions for the recovery of wages "shall be brought" within two years after the right of action shall have accrued. *United States v. Georgia Power Co.,* 474 F.2d 906 (5 Cir. 1973).

The defendant argues that this EEOC suit is essentially "private in nature" in its attempt to attain relief for Mrs. Hungerford, and therefore the state statute of limitations applies. *EEOC v. Eagle Iron Works,* 367 F.Supp. 817 (S.D.Iowa 1973).

■ The Fifth Circuit has decided the question of the applicability of state statutes of limitation to enforcement actions by the EEOC in a case which was unfortunately overlooked by both parties to this litigation. *EEOC v. Griffin Wheel Co.,* 511 F.2d 456 (5 Cir. 1975). *Griffin Wheel* held: (1) there was no applicable state statute of limitations for the injunctive aspects of the EEOC's complaint, since the complaint was "public in nature," seeking to enjoin practices contrary to public policy, and "where the government is suing to enforce rights belonging to it, state statutes of limitation are not applicable." *United States v. Georgia Power,* 474 F.2d at 906 (5 Cir. 1973);[3] *Griffin Wheel* held however that (2) insofar as the complaint sought recovery for back pay, it was "private in nature," and a "legal conduit for the recovery of sums due individual citizens rather than the treasury," *Georgia Power, supra,* at 906, and subject to Alabama's one-year statute of limitations.

Applying *Griffin Wheel's* analysis, the questions remaining are: (1) What is the applicable Georgia statute of limitations for Title VII actions seeking equitable relief and back pay relief? and (2) Does the Georgia statute of limitations for back pay relief bar the plaintiff in the instant case?

■ (1) The Fifth Circuit has adopted a bifurcated approach toward statute of limitations problems in private Title VII actions by distinguishing between equitable relief and back pay relief. *Boudreaux v. Baton Rouge,* 437 F.2d 1011, 1017 n.16 (5 Cir. 1971). Under the "borrowing" principles of *Beard v. Stephens,* 372 F.2d 685 (5 Cir. 1967), a federal court in Georgia looks to Georgia's statute of limitations. For private Title VII actions, Ga.Code Ann. § 3–704, the applicable statute, provides a limitation period of 20 years for equitable relief and two years for back pay relief. *United States v. Georgia Power,* 474 F.2d 906 (5 Cir. 1973); *Franks v. Bowman Transportation,* 495 F.2d 398 (5 Cir. 1974); *Ivey v. Western Electric Co.,* Civ. No. C74–754A (N.D.Ga., Judge Moye, decided April 3, 1975).

Although the plaintiff urges that the two-year back pay provision added to the Act by the 1972 amendments provides the applicable statute of limitations for Title VII back pay actions, plaintiff misconstrues the statute. The 1972 amendments to § 706(g) of Title VII which

---

**3.** It is settled law "that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights," *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940), accord, *United States v. Nashville, C. & St. L. Ry.,* 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81 (1886). See also *EEOC v. Eagle Iron Works,* 367 F.Supp. 817 (S.D.Iowa, 1973); *EEOC v. Union Oil Co. of California,* 369 F.Supp. 579 (N.D.Ala.1974); *EEOC v. Duff Bros., Inc.,* 364 F.Supp. 405 (E.D.Tenn.1973); and *EEOC v. Christiansburg Garment Co., Inc.,* 376 F.Supp. 1067 (W.D.Va.1974).

included a two-year limitation on back pay awards provide as follows:

> Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission . . . [42 U.S.C. § 2000e–5(g)]

However, this provision imposes no statute of limitations for the bringing of a back pay action. As the Court in *Griffin Wheel* construed it,

> . . . this is not a prescription as to when suits may be filed. Clearly, Congress simply meant to provide a maximum period during which an employer might be liable for back pay, but it did not thereby intend to modify applicable statute statutes of limitations on the ability to bring suit. [511 F.2d at 458]

■ (2) Applying the two-year statute of limitations period provided for back pay actions by Ga.Code Ann. § 3–704, the Court finds no bar to plaintiff's claim for back pay relief. Mrs. Hungerford was terminated at the end of August 1970. She filed her charge with the EEOC on September 2, 1970. The Commission's investigation begun January 4, 1971, culminated in the issuance of a right-to-sue letter to Mrs. Hungerford on June 11, 1974. This complaint was filed February 14, 1975. Since it is clear that the filing of a charge before the EEOC tolls the running of the limitations period "during such time as the processes of agency reconciliation are at work and until notification to the complainant that voluntary compliance cannot be obtained [i. e., by the 'right to sue letter']." *United States v. Georgia Power Co.*, 474 F.2d 906, 925 (5 Cir. 1973); *Franks v. Bowman Transportation Co.*, 495 F.2d 398, 405 (5 Cir. 1974), Mrs. Hungerford was well within the two-year period for filing a back pay action under Title VII. Mrs. Hungerford filed her charge on September 2, 1970 (no more than five days after the alleged wrongful termination). The statute was tolled from September 2, 1970, to June 11, 1974, the date of her right-to-sue letter. There-fore the statute ran for only eight months until the filing of the instant complaint on February 14, 1975.

Neither branch of plaintiff's complaint is barred by statute of limitations problems. Accordingly, defendant's objections in this regard are overruled.

V. *The EEOC is barred from bringing this action after it issued the statutory notice to the charging party that conciliation efforts had failed.*

■ The defendant contends that the EEOC's right to sue expired 90 days after Mrs. Hungerford was notified of her right to sue (*i. e.*, on June 11, 1974), as would be the case for private Title VII litigants. This contention has been rejected before in this district, *EEOC v. Rollins, Inc.*, No. 74–123, 8 FEP Cases 492 (N.D.Ga.1974), and in others, *EEOC v. U. S. Industries, d/b/a Round-the-Clock Hoisery*, 7 FEP Cases 171 (W.D. Tenn.1974); *EEOC v. Kimberly-Clark*, 511 F.2d 1352 (6 Cir. 1975), and this Court concurs in the reasoning of those cases. Defendant's last argument is overruled.

### Conclusion

In summary, the Court orders denied defendant's motion to dismiss or for summary judgment, but in doing so makes the following rulings:

(1) The scope of this judicial complaint shall be limited to consideration of Mrs. Hungerford's claim only;

(2) There has been no illegal non-reviewable delegation of powers to the EEOC district directors or regional litigation centers;

(3) There has been no illegal promulgation of EEOC regulations in contravention to the Administrative Procedure Act;

(4) The action is neither barred by the 180-day limitation period of Title VII, nor by the Georgia two-year statute of limitations for EEOC suits seeking the recovery of back pay relief in behalf of private parties;

(5) The EEOC's right to sue did not expire 90 days after the charging party, Mrs. Hungerford, was notified of her right to sue.