James McBRIDE, Plaintiff-Appellant,

v.

DELTA AIR LINES, INC., Defendant-Appellee.

No. 75–1955.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1976.

Decided March 11, 1977.

Rehearing and Rehearing En Banc Denied June 3, 1977.

---

A. G. Burkhart, Jr., Memphis, Tenn., for plaintiff-appellant.

William F. Kirsh, Jr., Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., Sidney F. Davis, Law Dept., Delta Airlines, Inc., Atlanta, Ga., for defendant-appellee.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

PER CURIAM.

James McBride appeals from the dismissal of his individual and class claims against Delta Air Lines. In his complaint he alleged that Delta had discriminated against him in particular and against black employees and black applicants for employment in general because of their race, in violation of 42 U.S.C. §§ 1981 and 2000e–2.

Delta had a national policy requiring dismissal for "conduct unbecoming a Delta employee," and regarded conviction of a crime as within that standard. In 1970, appellant was convicted of assault and battery on a Memphis policeman. Delta thereupon discharged McBride because of this rule and because of his spotty work record.

The district court found that "there was no discriminatory intent" motivating Delta's discharge of McBride. It also determined, after comparing the race of all employees discharged because of the national policy about convictions with the race of all dischargees, that the national policy was not discriminatory in effect. Of course, an employment practice which is discriminatory in effect on the basis of race, sex, reli-

gion or national origin violates 42 U.S.C. § 2000e–2(a)(1) and (2). *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). But these determinations are supported by the evidence and are not erroneous. We therefore affirm the judgment of the district court insofar as it dismisses McBride's individual claim.

We do not believe, however, that the district court correctly applied our circuit standard expressed in *Tipler v. DuPont*, 443 F.2d 125 (6th Cir. 1971), defining the scope of a class in a Title VII complaint. The district court's order does not make clear whether the class aspects of McBride's complaint were dismissed because no class could properly be certified, because the scope of the class would be more narrow than that which McBride had sought, because Delta had not violated 42 U.S.C. § 2000e–2, or because on the evidence presented no relief, injunctive or otherwise, was warranted for a violation of the statute.

■ In *Tipler*, we stated that the complaint filed by an aggrieved employee limits in some respects the scope of the class which may be certified in judicial proceedings. However, we held that the district judge should not restrict the scope of the class more narrowly than the ambit of the EEOC investigation that the individual's complaint might reasonably have been *expected* to stimulate. Because administrative complaints are filed by completing a form designed to elicit specificity in charges, and because the forms are not legal pleadings and are rarely filed with the advice of legal counsel, any other standard would unreasonably limit subsequent judicial proceedings which Congress has determined are necessary for effective enforcement of the legal standards established by Title VII. See House Report No. 92–238, U.S.Code Cong. and Admin.News, pp. 2141, 2147–48 (1972).

■ McBride's complaint to the EEOC alleged that he had been discharged because of his race. The EEOC's *conciliation* effort might reasonably have been expected to be restricted to Delta's discharge policies, and perhaps even particularly to the conviction rule, which, according to McBride, was racially discriminatory in effect. However, in order to determine whether the discharge policy was racially motivated or was racially discriminatory in effect, the *investigative* effort would certainly have required review of any racially discriminatory practices within Delta's large and complex personnel structure. Indeed, a pervasive pattern of discriminatory effects may support an inference of intentional discrimination underlying the individual charge of discriminatory firing. See *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, —— U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Therefore, the case must be remanded for a determination of the appropriate scope of the class in light of the *Tipler* standard.[1]

■ Furthermore, whatever may be the proper scope of the class, the district court's dismissal of the class claims on the merits is unwarranted. In its written opinion the court implicitly finds that there was a pervasive pattern of discriminatory employment practices at Delta when McBride's administrative and judicial complaints were filed. Nevertheless, it does not determine whether or not Delta has violated Title VII. Instead, the opinion states that a grant of injunctive or other relief would be "unwise." This determination may have been based in part on Delta's evidence of good faith efforts to remedy the earlier discrimination, and in part on the difficulty of coordinating relief with the administration of a system-wide discrimination suit brought by the United States against Delta in the Northern District of Georgia. See

1. Of course, as in all class actions, any certification must conform to the requirements of Rule 23 of the Federal Rules of Civil Procedure. Because the district court did not reach this issue, we express no view as to the appropriate determination. We hold only that the *Tipler* rule does not require a separate determination equivalent to Rule 23(c) certification. To the contrary, the *Tipler* standard serves only to assure that the EEOC will have an opportunity to investigate the claims of the class before the complaint is brought.

*United States v. Delta Air Lines*, No. C–18175 (N.D.Ga., April 27, 1973).

We agree with the district court that an appropriate disposition should afford the Memphis employees the opportunity to have their claims of discriminatory employment practices at their terminal fully considered, should recognize the interest of Delta in avoiding inconsistent remedies or unnecessarily onerous liability, and should not interfere with the orderly implementation of the Atlanta system-wide decree. The procedures for multidistrict litigation, see 28 U.S.C. § 1407, may be useful in reconciling these objectives.

The case is therefore remanded for reformulation of the scope of the class, for findings of fact and conclusions of law on the charge that Delta has violated the rights of the class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and 42 U.S.C. § 1981, and for appropriate class remedies if a violation is found. The foregoing is without prejudice to the utilization of the procedures for multidistrict litigation, if the district court should in its discretion determine that those procedures would be useful.

WEICK, Circuit Judge, dissenting.

I would affirm the judgment of the District Court in its entirety. I regard McBride's claim for discriminatory discharge as frivolous, and the remand ordered by the majority opinion as wholly unnecessary.

McBride was employed by Delta as a Skycap in 1968. His employment came about as a result of the friendship and influence of his father with Delta's Memphis Terminal Manager. The following year McBride, who is black, was given a double promotion to the position of Cargo Service Agent, which was a responsible position, and in receiving the promotion McBride skipped the intermediate position of Cargo Service Supply Agent.

After receiving the promotion, however, his work product deteriorated. He had three accidents on company premises due to his negligence in operating a company vehicle, which negligence resulted in property damage. The District Judge, in his opinion, indicated that it was shown in several areas that McBride was accident prone. He further stated:

A great deal of emphasis was given to the fact that in one of these accidents there was an alleged defective condition of brakes, which the Court feels was really immaterial to any question here. The condition of the brake of the object hit seems scarcely to the Court to be material to whether the person hitting it with another object was careless or not, and the proof and evidence, the Court feels, demonstrated that the carelessness occurred in the case of this employee and that we don't find that with respect to the time that Mr. McBride was employed by Delta that it has been established that there was discrimination practiced against him with respect to any discipline that may have been imposed by reason of these different episodes.

It has also been shown that Mr. McBride, in connection with one of the accidents did fail to report the accident which involved a customer of the air line, and that this was a factor which fairly could be taken into account and was testified about by one of the supervisory officers in appraising Mr. McBride's trustworthiness in that respect.

In addition to his being accident prone, which is not a virtue for an airline employee whose employer is required by law to maintain at all times a high standard of safety for its passengers and crew, McBride was subject to discipline for being tardy and absent from work. Notwithstanding this poor employment record, Delta took no action to discharge him until after he had been convicted upon his plea of guilty and had served a sentence of a serious violent crime of assault and battery committed upon two police officers of Memphis, Tennessee.

On May 3, 1969, while off duty, and following an automobile accident in which he and his brother were involved, an altercation took place between McBride, his broth-

er and the two police officers who were at the scene and were investigating the accident. One of the officers was white and the other was black. McBride and his brother, both of whom were intoxicated, attacked the two officers, injuring one of them. It was necessary to call out additional police cars to the scene in order to rescue the officers. No racial connotations were involved in this incident since the attack was upon both white and black arresting officers.

McBride was arrested and charged with assault and battery on the officers. Even this incident did not result immediately in his discharge. The company cautiously waited until after his trial before taking any action. McBride's criminal case did not come up for trial until a year later, i. e., May, 1970, when he entered a plea of guilty to the charge and was sentenced to thirty days' imprisonment in the Shelby County Penal Farm. Delta's officials from its Georgia office then discharged McBride because of his conviction and sentence for the commission of a violent crime, and because of his poor work record. This action was pursuant to its national policy permitting discharges for conduct unbecoming a Delta employee.

McBride then filed a charge with EEOC, which stated simply: "[T]he Company discharged me because of my Negro race."[1]

McBride filed a class action against Delta in the District Court, with a pauper's affidavit, although the District Court found that he had at that time secured other employment with substantial remuneration. In his complaint he alleged with respect to his personal claim:

1. The following policies, practices, customs and usages made unlawful by Title VII of the Civil Rights Act of 1964 have been instituted and/or maintained by the defendant, Delta Airlines, Inc.

2. (A) The defendant refuses to allow Negro employees to continue employment for defendant after said Negro employees have been convicted of a crime, felony or misdemeanor. The defendant has allowed and continues to allow white employees of said defendant's organization to continue employment after they have been convicted of a crime, felony or misdemeanor.

McBride also alleged discrimination in the hiring, promotion and seniority practices of the company, none of which were applicable to him.

His prayer was for injunctive and back pay relief for himself and for his class.

The only trouble with McBride's claim for discriminatory discharge was that it lacked evidentiary support and substantiality.

As before stated, Delta had a system-wide rule providing for the dismissal of employees for "conduct unbecoming of a Delta employee." Under this rule the company considered conviction of a violent crime, such as assault and battery, to be conduct warranting discharge. Between January, 1970 and January, 1974, the time of the first hearing in the present case, Delta, system-wide, terminated the employment of 79 of its employees for conduct unbecoming of an employee; of these 79 employees 49 were white, and 30 were black. 17 employees, four of whom were black, were discharged for misconduct away from company property. Additionally, 15 of these 79 employees were convicted of a crime, and of these 15 employees 9 were white, 4 were black, one was Spanish-American, and one's status was unclear from the record.[2]

This does not prove a discriminatory discharge in any respect. To the contrary, many more whites were discharged for misconduct than were blacks. The record does not show that any of these whites ever filed charges with EEOC, alleging discrimina-

1. The District Director of EEOC, who investigated the charge, adopted findings of fact, dated September 8, 1971, with respect to the Memphis Terminal, in which he listed six Caucasions who were discharged for misconduct and only one black, namely, McBride. Nevertheless, EEOC granted permission to sue.

2. It is unclear from the record in which group the Spanish-American was included.

tion, nor did any of the blacks other than McBride.

The District Judge heard the evidence for three days, and at the conclusion of the evidence on January 4, 1974 he delivered an oral opinion which is set forth at length on fourteen pages of Appendix Vol. I. In his opinion the Judge made findings of fact and conclusions of law. He found that the national policy of Delta, providing for discharge of employees for conduct unbecoming a Delta employee, where criminal, or allegedly criminal, or immoral or wrongful conduct is involved, was a facially neutral policy and was not intentionally discriminatory in any respect. After detailing the evidence, which included the fact that Delta waited for a year until McBride was tried, convicted, sentenced, and had served his sentence, before discharging him, the Court held that he had not met his burden of proof required under 42 U.S.C. § 2000e–5 to establish that Delta had intentionally engaged, or is engaging, in an unlawful employment practice in regard to his discharge, and found in favor of the defendant. The Court continued for a further hearing the class action aspects of the case by a preliminary order entered on January 8, 1974.

On September 11, 1974 the District Judge entered another order in which he reaffirmed his previous order and again held, after further recitation of the evidence, that the policy of discharge in these circumstances was facially neutral and was carried out in a racially non-discriminatory fashion.

These findings of fact are supported by substantial evidence and are not clearly erroneous; in fact, no other conclusion could be reached without doing violence to establish legal principles.

The Court continued the case further to permit counsel to respond to certain questions relating to the class action aspects of the case, including the applicability of the consent decree which had been negotiated with the Civil Rights Division of the Department of Justice and the Department of Labor in the pattern and practice action filed by the *United States v. Delta,* in the District Court in Atlanta, Georgia, dated April 27, 1973, Civil Action # 18175, which had system-wide application and had been availed of by employees at the Memphis Terminal.

The final hearing of the class action was conducted on December 20, 1974. McBride did not even attend that hearing; he apparently was no longer interested since his personal claim had been dismissed.

In an order entered on March 17, 1975 the Court, after discussing the evidence and the applicability of the consent decree in the Atlanta case, stated:

The Court has discussed the class aspects of the complaint and considered relief only with respect to the prayer for general relief from racial discrimination as it may affect other Delta employees besides McBride. No notice has been given in this case to potential class members, and the Court has made no F.R.C.P. 23 determination that it should be constituted as a class action. There has been considerable doubt that McBride is an appropriate class representative except with regard to those who may claim to have been discharged improperly by reason of race during the relevant period here involved. The E.E.O.C. investigation on the simple and concise charge that "The company discharged me because of my Negro race" would evidently and logically be confined to terminations only.[1]

[1] This is borne out by the District Director's findings and [sic] fact dated September 8, 1971, in McBride's case.

Appropriate consideration of the charge made should consistently then be limited to discharge situations, not those dealing with promotions, seniority systems, bidding, transfer and hiring policies. *Sanchez v. Standard Brands,* 431 F.2d 455 (5th Cir. 1970); *Oatis v. Crown Zellerbach,* 390 [398] F.2d 496 (5th Cir. 1968); *E.E.O.C. v. New York Times, d/b/a WREC–TV,* 364 F.Supp. 651 (W.D.Tenn. 1973). See also *Tipler v. DuPont,* 443 F.2d 125 (6th Cir. 1971).

The Court then entered a final order dismissing, with prejudice, McBride's personal

claim and dismissing, without prejudice, the alleged class action.

There are two very good reasons supporting the District Court's order. First, the only charge ever filed by McBride with EEOC was the one in which he stated, "The company discharged me because of my Negro race." The charge filed by McBride with EEOC caused EEOC to investigate only his discharge. That matter was investigated by the Regional Director of EEOC, and he adopted the findings of fact hereinbefore quoted in footnote 1, indicating that there was no basis for the charge.

EEOC had no reason to investigate the hiring, promotion and seniority practices of a national airline throughout its entire system, because no charge had ever been filed with it that would reasonably cause it to make such an extensive investigation.

In *Tipler v. E. I. duPont deNemours & Co.,* 443 F.2d 125 (6th Cir. 1971), the Court, in an opinion written by the late Judge William E. Miller, recognized that "the complaint in the judicial proceedings is only limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Authority for this statement cited and relied on by the Court was *Sanchez v. Standard Brands,* 431 F.2d 455 (5th Cir. 1970), and *King v. Georgia Power Co.,* 295 F.Supp. 943 (N.D.Ga. 1968). *Cf. Marlowe v. Fisher Body,* 489 F.2d 1057, 1064 (6th Cir. 1973).

In *Sanchez, supra,* the Court said:

[Thus] within this statutory scheme, it is only logical to limit the scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. (*Id.* 466)

In *King, supra,* the Court stated:

This rule, broadly speaking, in effect limits the civil action to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer. If the civil action were not so limited, then the primary emphasis of this Title would be circumvented, i. e., an emphasis upon vol-untary settlement of all issues without an action in the District Court. (*Id.* 947)

*See also E.E.O.C. v. National Cash Register Co.,* 405 F.Supp. 562, 567 (N.D.Ga.1975), and the cases cited therein; *E.E.O.C. v. Western Elec. Co.,* 382 F.Supp. 787, 799 (D.Md.1974); and *Kinsey v. Legg, Mason & Co.,* 60 F.R.D. 91, 97 (D.D.C.1973).

When McBride complained to EEOC he limited his claim solely to his discharge. To expand this single issue into practices as different and diverse from discharges as those relative to hiring, promotions, and seniority practices over its entire system, which practices did not apply to McBride, would be unfair to Delta. The company would hardly expect to be put under a microscopic investigation of all of its hiring, promotion, and seniority policies in its nationwide organization, merely because of a neutral company discharge rule governing all employees irrespective of race, which rule had been applied to only one employee in its Memphis terminal, because of his conviction of a violent crime.

One would reasonably expect EEOC to investigate the charge of racial discrimination in McBride's discharge, which it did, and to direct its conciliation efforts in that direction. The rule is an objective standard applied by the company throughout the entire area which it serves. No matters of hiring, promotion or seniority were really at issue here; either the company rule was valid, or it was not.

"[A] class action must proceed within the bounds of the issues properly raised by the plaintiff . . . representing the class." In a Title VII class action only those issues raised before the EEOC "delineate the scope of the issues which may properly be raised in the subsequent lawsuit." *Smith v. North American Rockwell Corp.,* 50 F.R.D. 515, 524 (N.D.Okl.1970). *See also Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968).

Second, even though a single charge of employment discrimination may be sufficient, under some circumstances, to initiate a broader inquiry into the employer's employment practices of a similar nature, "the

district court is vested with some discretion in determining the parameters of the class." *Green v. Missouri Pac. R.R.*, 523 F.2d 1290, 1299 (8th Cir. 1975). Only an abuse of this discretion by the District Judge should change the proper scope of the class, *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1123 (5th Cir. 1969), and *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1061 (8th Cir. 1975), "because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 (9th Cir. 1974).

Under the circumstances of this particular case it is clear that the District Judge did not abuse his discretion in determining the scope of the class to be employees whose employment was terminated, and his findings should not be disturbed. *Green v. Missouri Pac. R.R., supra*, at 1299.

The District Court was correct in questioning the propriety of McBride, who was convicted and served a sentence for the commission of a violent crime, acting as representative of a class of employees having complaints in which McBride did not share, with respect to hiring, promotion and seniority practice. McBride had nothing in common with their complaints as he had been treated differently by Delta. He had received a double promotion and would be working for Delta today if he had not pleaded guilty to and was convicted and served a sentence for a violent crime. Delta ought not to be faulted for getting rid of accident prone, tardy and absentee persons who commit violent crimes, irrespective of their race. The public would not stand for being served on airplanes by such employees who might endanger their own lives and the lives of the passengers.

As was well stated by the Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971):

> In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a

minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.

The Court dismissed the class action without prejudice. No other employee sought to intervene.

There is no point in remanding the case to the District Court as ordered by the majority, for findings of fact and conclusions of law on the charge that Delta has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and 42 U.S.C. § 1981 and for appropriate class remedies if a violation is found. In my opinion the District Judge has already adopted such findings of fact and conclusions of law in his original opinion and order of January 4 and 8, and orders of September 11, 1974 and March 17, 1975. He found specifically that McBride's discharge was not discriminatory, but was because of his conviction and sentence for a violent crime, and because he was accident prone, tardy and absent. We should not require the Court to do its work all over again, particularly since the majority appears to concede that the findings of the Court supported the judgment in favor of Delta on McBride's personal claim.

It also appears that the Memphis employees already have "the opportunity to have their claims of discriminatory employment practices at their terminal fully considered . . ." by the Atlanta court, and a number of them already have done so. It is therefore not necessary for us to remand for any such purpose. We applied a similar consent decree in *Martini v. Republic Steel Co.*, 532 F.2d 1079 (6th Cir. 1976). There can be no purpose served in having two class action proceedings.

As to racial impact, the Supreme Court in *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976), stated:

. . . [O]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional *solely* because it has a racially disproportionate impact.

The bringing of this action by McBride was clearly a misuse of the Civil Rights Act. This suit has been extensively litigated over a period of years and has no doubt already subjected Delta to considerable expense. If such practice continues to abound no employer could safely risk refusing to hire, or to discharge, any person of a minority group, even for a valid reason, unless it desired to defend itself in costly litigation. *Griggs v. Duke Power Co., supra,* does not sanction any such practice. The Court is simply not following *Griggs* here.

The doctrine of respondeat superior is based on the right of an employer to select his own employees, or to discharge them if no contract is involved. If an employer no longer possesses this right, then the time-honored doctrine of respondeat superior ought to be re-examined.

District Judge Harry Wellford handled this extensive litigation, along with many other cases on his docket, in a careful, deliberate and patient manner. He even "leaned· over backward" when he allowed McBride's lawyer an attorney's fee of $500, to be paid by Delta, although McBride had not prevailed and such allowance of fee was unauthorized. It is time to write finis to this unsubstantial and needless litigation.

The judgment of the District Court should be affirmed.