Sylvester TIPLER, Plaintiff-Appellee,

v.

E. I. duPONT deNEMOURS AND CO.,
Inc., Defendant-Appellant.

No. 20639.

United States Court of Appeals,
Sixth Circuit.

May 27, 1971.

William F. Kirsch, Jr., Memphis, Tenn., for defendant-appellant, Maurice Wexler, Memphis, Tenn., on brief, Heiskell, Donelson, Adams, Williams & Wall, Memphis, Tenn., of counsel.

Ronald S. Borod, Memphis, Tenn., for plaintiff-appellee.

Robert B. Fitzpatrick, Washington, D. C., for Equal Employment Opportunity Commission as amicus curiae, Stanley P. Hebert, Gen. Counsel, Julia P. Cooper, Gen. Atty., David W. Zugschwerdt, Atty., Equal Employment Opportunity Commission, Washington, D. C., on brief.

Before CELEBREZZE and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This action is based on Title VII of the Civil Rights Act of 1964. It comes before us upon a discretionary appeal from a denial of appellant's motion to reconsider the Court's prior adverse ruling on a motion for summary judgment. Plaintiff-appellee, a Negro laborer who had been employed by defendant-appellant for ten years, successfully partici-

pated in a union election which ousted appellant's white foreman from a position of leadership in a 95% black union. Appellee and three other black employees were subsequently discharged from employment with appellant on May 5, 1967.[1] Appellant contends that these employees were fired for cause, especially for leaving work early on the day of their discharge.

On May 8, 1967, appellee filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that his discharge was racially motivated, that appellant discriminated against Negroes in both the physical conditions of employment and the opportunities for promotion, and that he had been punished for advocating his rights as an employee. After appellee amended his charge of discrimination to include general allegations of racial discrimination and the EEOC conducted an investigation, a Notice of Right to Sue was issued on August 19, 1969, based upon the EEOC's finding of reasonable cause to believe that appellant had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

Two days later on May 10, 1967, appellee filed a claim for unemployment compensation with the Tennessee State Department of Employment Security. Finding that appellee was not discharged for misconduct within the meaning of the applicable Tennessee statute, the appeals tribunal of the Tennessee Employment Security Department reversed a preliminary determination and allowed appellee's claim.

On May 11, 1967, appellee filed a charge with the National Labor Relations Board (NLRB), alleging in general terms that he had been fired in violation of Sections 8(a) (1)[2] and 8(a) (3)[3] of the National Labor Relations Act. In an amended charge he specified that appellant had discharged him because of his union activities. Following an extended evidentiary hearing, the NLRB Trial Examiner found that appellee was dismissed for cause and not because of the personal vengeance of appellant's foreman, and recommended that appellee's claim be dismissed. The NLRB accepted the Trial Examiner's findings and recommendation.

Pursuant to the EEOC's authorization, appellee then filed suit in the United States District Court for the Western District of Tennessee, Western Division, seeking an injunction against future racially discriminatory practices, reinstatement and back pay, and general relief. He alleged that his discharge was based on racial motivations and his active opposition to appellant's unlawful employment practices. He further charged that appellee discriminated against Negro employees in the provision of restrooms, eating facilities, coffee breaks and opportunities for promotion, in violation of Title VII of the Civil Rights Act of 1964.

Appellant filed a motion for summary judgment on the issues of appellee's discharge, reinstatement and back pay. The motion, alleging collateral estoppel and res judicata, judicial estoppel, lack of standing, and a variance between the EEOC charge and the judicial complaint,

1. The three employees discharged with the appellee are not parties in the case at bar.

2. Section 8(a) (1) of the National Labor Relations Act reads: "(a) It shall be an unfair labor practice for an employer * * * (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [dealing with the right of employees to organize and join labor organizations,

to bargain collectively, etc.]' 29 U.S.C. § 158(a) (1).

3. Section 8(a) (3) of the National Labor Relations Act reads in pertinent part: "(a) It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." *Id.* § 158(a) (3).

was denied. Appeal is from the denial of a motion to reconsider.[4]

**I   Collateral Estoppel and Res Judicata**

Appellant first argues that the appellee is precluded by res judicata and collateral estoppel from asserting that he was discharged because of racial prejudice since the cause of his discharge was previously litigated by the NLRB. We do not agree.

Although frequently confused, res judicata and collateral estoppel are different theories which often lead to the same result. These rules have been distinguished in the following manner:

> * * * application of the doctrine of res judicata necessitates an identity of causes of action, while the invocation of collateral estoppel does not. Each doctrine, on the other hand, requires that, as a general rule, both parties to the subsequent litigation must be bound by the prior judgment. The essence of collateral estoppel by judgment is that some question or fact in dispute has been judicially and finally determined by a court of competent jurisdiction between the same parties or their privies. Thus the principle of such an estoppel may be stated as follows: Where there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, or demand, the judgment in the first suit operates as a collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended. 1B Moore's Federal Practice ¶0.441[2], at 3777 (footnotes omitted).

■ Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice. Title v. Immigration and Naturalization Service, 322 F.2d 21 (9th Cir. 1953); Matias Rivera v. Gardner, 286 F.Supp. 305 (D.P.R.1968); Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584, 281 F. Supp. 971 (E.D.N.Y.1968); 1B Moore's Federal Practice ¶ 0.405[12], at 791; 2 K. Davis, Administrative Law Treatise § 18.02, at 548 (1958).

■ It is now accepted that both res judicata and collateral estoppel can be applicable to decisions of administrative agencies acting in a judicial capacity. United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); Painters District Council No. 38 v. Edgewood Contracting Co., 416 F.2d 1081 (5th Cir. 1969); Pacific Seafarers, Inc. v. Pacific Far East Line, Inc., 131 U.S.App.D.C. 226, 404 F.2d 804 (D.C. Cir. 1968), *cert. denied*, 393 U.S. 1093, 89 S.Ct. 872, 21 L.Ed.2d 784 (1969); Fairmont Aluminum Co. v. Commissioner of Internal Revenue, 222 F.2d 622 (4th Cir.), *cert. denied*, 350 U.S. 838, 76 S.Ct. 76, 100 L.Ed. 748 (1955); 2 K. Davis, Administrative Law Treatise § 18.02, at 609 (Supp.1970). *Cf.* Safir v. Gibson, 432 F.2d 137 (2d Cir.), *cert. denied, see* 400 U.S. 850, 91 S.Ct. 57, 27 L.Ed.2d 88 (1970).

■■ Despite the possible applicability of these doctrines to administrative decisions, in the instant action it would be inappropriate to apply either. The issue here is whether appellee's dismissal was in violation of Title VII of the Civil Rights Act of 1964. The NLRB decision, on the other hand, dealt with an alleged violation of the National Labor Relations Act. Although these two acts are not totally dissimilar, their differences significantly overshadow their similarities. Pettway v. American Cast Iron Pipe Co., 411 F.2d 998 (5th Cir. 1969). *See* Comment, 44 N.Y.U.L.Rev. 404 (1969). Absent a special consideration, a determination arising solely under one statute should not automatically

---

4.   The District Judge granted a discretionary appeal pursuant to 28 U.S.C. § 1292(b).

be binding when a similar question arises under another statute. *See* Title v. Immigration and Naturalization Service, 322 F.2d 21, 25 n. 11 (9th Cir. 1963); 2 K. Davis, Administrative Law Treatise § 18.04, at 577–78 (1958); *cf.* Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 601–602, 68 S.Ct. 715, 92 L.Ed. 898 (1948). This is because the purposes, requirements, perspective and configuration of different statutes ordinarily vary. This case provides an excellent example of the differences in two statutes. Racial discrimination in employment is an unfair labor practice that violates Section 8(a)(1) of the National Labor Relations Act if the discrimination is unjustified and interferes with the affected employees' right to act concertedly for their own aid or protection. United Packinghouse, Food & Allied Workers International Union v. National Labor Relations Board, 135 U.S.App.D.C. 111, 416 F.2d 1126, 1135, *cert. denied,* 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969). In contrast, racial discrimination in employment is prohibited by Title VII without reference to the effect on the employees' right to unite. Hence, certain discriminatory practices that are valid under the National Labor Relations Act may be invalid under Title VII. *See* Taylor v. Armco Steel Corp., 429 F.2d 498 (5th Cir. 1970). *See generally,* Fuchs & Ellis, Title VII: Relationship and Effect on the National Labor Relations Board, 7 B.C.Ind. & Com.L.Rev. 575, 597–600 (1966).

■ As a result of the variant standards of these statutes, the NLRB hearing did not adequately consider the factors necessary for a Title VII violation. The Trial Examiner was primarily concerned with the question whether the appellee's union activities led to his discharge.[5] This is understandable considering that the Trial Examiner was only investigating a possible violation of the National Labor Relations Act. Consequently, he did not fully explore the racial aspects of the case before him.[6] Had he done so, he may have been acting beyond the scope of his authority since certain acts of racial discrimination are not within the ambit of the National Labor Relations Act, even though they are proscribed by Title VII. Considering the differences in these two acts, it would be anomalous if a finding under one should preclude a determination under the other, absent special considerations.

The legislative history of Title VII supports this conclusion. During the debate in Congress over Title VII, Senator Clark introduced a letter from the Attorney General indicating that Title VII does not prevent an individual from proceeding under both Title VII and the National Labor Relations Act. 110 Cong.Rec. 7207 (1964). Similarly, the United States Senate rejected a proposed amendment which would have made Title VII the exclusive means of relief for most discriminatory employment practices. 110 Cong.Rec. 13650–52 (1964). This action is some evidence at least that Congress, realizing the differences between Title VII and other statutes directly or indirectly proscribing racial discrimination in employment, did not intend for a decision under one such

---

5. The Trial Examiner's final conclusion stated: " * * * I conclude and find that, Tipler's participation in or association with intraunion disputations with Shinault [appellant's foreman] played no role in Jackson's decision [to fire the appellee] and that his decision would have been the same if Tipler had had no dispute with Shinault." Exhibit C–5, page 12.

6. It is interesting to note that during the NLRB hearing appellant's attorney objected to the introduction of evidence of racial discrimination. When Tipler told that he would have been fired had he used certain restroom facilities, appellant's counsel stated: "I will object to this. This has nothing to do with union activities. He is bringing out race. I think it is inflammatory and prejudicial and I don't see any relevancy to it." Exhibit C–8, page 44.

provision to bar automatically a suit under another statutory scheme.

This Court's recent decision in Dewey v. Reynolds Metals, 429 F.2d 324 (6th Cir. 1970), *cert. granted,* 400 U.S. 1008, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971), does not .contradict this conclusion. *Dewey* held that a Title VII action could not be brought after the grievance had been finally adjudicated by the binding arbitration procedures required by the collective bargaining contract. This result was the product of a fear that a contrary result would "destroy the efficacy of arbitration." *Id.* at 332. In the case before us, however, no such overriding policy considerations are present, for no binding arbitration was required. Therefore, the special circumstances upon which *Dewey* was based are not relevant here.

## II   Judicial Estoppel

■ Appellant also argues that appellee is precluded by the doctrine of judicial estoppel from asserting in this action that his discharge was racially motivated since he had twice previously maintained under oath that his discharge was the product of union activities. Despite the seeming inconsistency in appellee's positions, a consideration of the context of the union activities indicates that the inconsistency is of form rather than substance. Allegations of racial motivation were inherent in the appellee's complaints to the NLRB[7] and the Tennessee State Department of Employment Security. Appellee's union activity, asserted before both agencies as the cause of his discharge, was clearly the product of racial tension and hostility. In that intraunion fight, the overwhelming number of black members successfully replaced the union's white leadership with a slate composed of blacks. Appellant's foreman was one of the deposed white union officials. In this con-

text, it is not inconsistent for appellee to assert that his discharge at the suggestion of the white foreman was the result of either union activity or racial considerations, or both.

## III   Standing

■ Appellant further alleges that appellee has no standing to challenge the alleged discriminatory practices since he is no longer an employee of the appellant. This contention is contrary to the clear weight of authority. In Johnson v. Georgia Highway Express, Inc., 417 F. 2d 1122 (5th Cir. 1969), for example, the Court permitted a former employee, allegedly fired for racial reasons, to maintain a class action consisting of an "across the board" attack on discrimination. *See also* Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970); Wilson v. Monsanto Co., 315 F.Supp. 977 (E.D.La.1970) (job applicant); Kemp v. General Electric Co., 60 L.C. ¶9238 (N. D.Ga.1969) (discharged employees); Gunn v. Layne & Bowler, Inc., 56 L.C. ¶9088 (W.D.Tenn.1967) (discharged employee). *But cf.* Colbert v. H-K Corp., 295 F.Supp. 1091 (N.D.Ga.1968). It is to be noted that although the present action is not labelled a class action, it "is perforce a sort of class action for fellow employees similarly situated." Jenkins v. United Gas Corp., 400 F.2d 28, 33 (5th Cir. 1968). *See also* Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355 (6th Cir. 1969). Appellant's black employees will benefit if appellee's position is upheld in the District Court, for part of his complaint seeks general relief against a wide range of past and present allegedly discriminatory practices. Considering the class aspects of this action, the District Court should take necessary precautions to protect the interests of the parties who will be affected by the action.

---

7.  Appellant himself noted the "racial overtones in the issues litigated before the N.L.R.B." Brief of Appellant, p. 8. As the result of this aspect of the case, appellant described appellee's claim before

the NLRB as an allegation of discharge "for unlawful reasons relating to his intraunion, racially oriented power struggle." *Id.* at 9.

## IV Scope of EEOC Charge

Finally, appellant contends that appellee cannot raise the issue in the courts that he was discharged for his active opposition to appellant's unlawful employment practices because this allegation was not included within his EEOC charge.

Before deciding this question, it is necessary to establish several general principles. First, this Court has recognized that Title VII of the Civil Rights Act of 1964 should not be construed narrowly. Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, 418 F.2d 355, 358 (6th Cir. 1969). In addition, charges of discrimination filed before the EEOC will generally be filed by lay complainants who are unfamiliar with the niceties of pleading and are acting without assistance of counsel. Graniteville Company v. Equal Employment Opportunity Commission, 438 F.2d 32 (4th Cir. 1971). As a result, federal courts should not allow procedural technicalities to preclude Title VII complaints. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). When this approach is applied to the determination of whether a judicial complaint encompasses the EEOC charge, it is clear that the exact wording of the charge of discrimination need not "presage with literary exactitude the judicial pleadings which may follow." *Id.* at 465. Rather, the complaint in the judicial proceedings is only limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *Id.* at 466; King v. Georgia Power Co., 295 F.Supp. 943 (N.D.Ga.1968).

In the case at bar it is true that neither the original nor amended charge of discrimination stated precisely that appellee was discharged for his active opposition to appellant's alleged unlawful employment practices. The original charge of discrimination did allege, however, that appellee was punished for asserting his rights as an employee. In addition, among other contentions, the amended charge of discrimination stated that appellant discriminated against Negroes by terminating appellee's employment without justification. We read these charges as sufficient to include the allegation that appellee was discharged for his active opposition to appellant's unlawful employment practices. The fact that a judicial complaint alleges a more detailed and refined contention than that contained in the charge of discrimination does not mean that the former was not included in the latter.

Appellant cites two cases in support of his position. Neither is controlling. Oatis v. Crown Zellerbach Corp., 398 F. 2d 496 (5th Cir. 1968) was specifically rejected by the Fifth Circuit as authority on the question presented here. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970). Similarly, Colbert v. H-K Corp., 295 F.Supp. 1091 (N.D.Ga.1968) does not support appellant's contention. In that case the District Court held that the judicial complaint must only be *"related* to the charge filed with the EEOC." *Id.* at 1093 (emphasis added). The necessary relationship is clearly present in the case at bar.

Affirmed.