The TOWNSHIP OF BENTON, City of Benton Harbor and Benton Harbor Area Schools, Plaintiffs-Appellees,

v.

COUNTY OF BERRIEN, Defendant-Appellant,

Economic Development Administration, Defendant.

TOWNSHIP OF BENTON, City of Benton Harbor and Benton Harbor Area Schools, Plaintiffs-Appellees,

v.

ECONOMIC DEVELOPMENT ADMINISTRATION, Defendant-Appellant,

County of Berrien, Defendant.

Nos. 77–1689 and 77–1690.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1977.

Decided and Filed Feb. 8, 1978.

John C. Bruha, John A. Smietanka, St. Joseph, Mich., Morton Hollander, Neil H. Koslowe, Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., Frank S. Spies, U. S. Atty., Robert C. Greene, Grand Rapids, Mich., for defendant-appellant.

Thomas N. Robinson, Jr., Robinson, Ford & Swanson, Benton Harbor, Mich., John D. Tully, Eugene E. Smary, Warner, Norcross & Judd, Grand Rapids, Mich., Yvonne

Hughes, Benton Harbor, Mich., for plaintiffs-appellees.

Before CELEBREZZE and MERRITT, Circuit Judges, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This appeal is taken from a summary judgment in favor of local governmental units in Berrien County, Michigan, which found certain regulations adopted by Appellant Economic Development Administration (EDA) to be arbitrary and capricious and which enjoined distribution of funds pursuant to said regulations. Appellant County of Berrien (County) argues that summary judgment was not proper and that the District Court erred on the merits. (No. 77–1689). Appellant EDA has moved to dismiss its appeal. (No. 77–1690). The appeals were consolidated for oral argument. For reasons stated below, we deny the motion to dismiss, uphold the propriety of summary judgment, and reverse the judgment of the District Court on the merits.

### FACTS

On July 22, 1976, Congress enacted into law over a Presidential veto the Local Public Works Capital Development and Investment Act of 1976. (1976 Act).[1] The Act authorized appropriation of $2 billion and was designed "to alleviate the problem of national unemployment" and "to stimulate the national economy by assisting State and local governments to build badly needed public facilities."[2] The 1976 Act was to be administered by the Secretary of Commerce, acting through the EDA. The local governmental parties to this action, all in Berrien County, Michigan, applied for project funding under the 1976 Act but the only recipient of a grant was the Lake Michigan College District, a county-wide community college located in Benton Township. The award by the EDA and the regulations under which it was granted are not challenged in this lawsuit. *Cf. City of Benton Harbor v. Richardson,* 429 F.Supp. 1096 (W.D.Mich.1977).

On May 13, 1977, the President signed into law the Public Works Employment Act of 1977. (1977 Act).[3] The 1977 Act amended the 1976 Act, authorized appropriation of an additional $4 billion, and was designed to spur "a redoubled public works jobs effort as part of [the President's] overall economic recovery package."[4] Administration of the 1977 Act became known as "Round II," to distinguish it from "Round I" under the 1976 Act.

Regulations for the implementation of Round II under the 1977 Act were published by the EDA on May 27, 1977,[5] and amended on July 11, 1977. Administrative guidelines were issued on June 6, 1977. Quick action on the part of the EDA was necessary as the 1977 Act appropriation expired on September 30, 1977.[6]

The EDA chose to allocate Round II funds on the basis of unemployment fig-

---

1. Public Law 94–369, 90 Stat. 999, 42 U.S.C. § 6701, *et seq.*

2. H.R.Rep.No.94–1077, 94th Cong., 2d Session 2 (1976), reprinted in 1976 U.S.Code Cong. and Admin.News 1746, 1747.

3. Public Law 95–28, 91 Stat. 116, amending 42 U.S.C. § 6701, *et seq.*

4. H.R.Rep.No.95–20, 95th Cong., 1st Session 2 (1977), reprinted in 1977 U.S.Code Cong. and Admin.News pp. 150, 151.

5. 13 C.F.R. § 317.1 *et seq.*, promulgated pursuant to Public Law 94–369, Title I, § 107, 42 U.S.C. § 6706, as amended by Public Law 95–28, Title I, § 104, 42 U.S.C. § 6706.

6. The appropriation under the 1977 Act expired at the end of the federal fiscal year ending September 30, 1977. Public Law 95–29, 91 Stat. 122, 123–24.

The 1976 Act also contemplated quick action by the EDA. Public Law 94–369, Title I, § 107, 42 U.S.C. § 6706, as amended by Public Law 95–28, Title I, § 104, 42 U.S.C. § 6706, required the promulgation of regulations within thirty days after the effective date of the 1976 Act and required every application for funds to be acted on within sixty days of receipt. Public Law 94–369, Title I, § 106(d), 42 U.S.C. § 6705(d), also required that approval be given only to applicants which could give satisfactory assurance that on-site labor could begin within ninety days of project approval.

ures, those areas with the highest unemployment rates receiving high priority. The EDA also chose to take into consideration Round I distributions by deducting Round I projects from Round II target areas so as to avoid concentrating funds in any given area. School districts were eligible to share in Round II grants but unemployment figures were not readily available for school districts, as such, so school districts were not considered separate planning targets in Round II. The EDA guidelines charged Round I school district awards against the township or city in which the school district project was located but not against the county in which the school district was located or served.

The specific application of these EDA regulations and guidelines resulted in the following Round II allocations for the Berrien County area: County—$1,167,000; City of Benton Harbor (City)—$1,609,000. The grant to the City was apportioned between the City and the Benton Harbor Area School District (School District). As noted, school districts *per se* were not planning targets under Round II but were eligible for Round II funds. School districts were to share in the allocation to the general-purpose governmental unit (i. e., city, township or county) principally served by the school district, which in this case matched the City and School District. Since the City and School District could not jointly agree on how to divide the allocation, the EDA made the division itself, pursuant to its regulations, and divided the $1,609,000 equally between the City and School District. The Round I award to the Lake Michigan College District was charged against the Township of Benton (Township), in which that project was located, resulting in no Round II eligibility for the Township government notwithstanding that the Township government itself had received no Round I funding.

Upon learning of its ineligibility under Round II, the Township brought this action against the EDA on June 24, 1977. The School District, the City and the County were added as parties, with the County aligning itself as a defendant. The thrust of the complaint was that the regulations and guidelines in question were arbitrary and capricious in that they deducted Round I school district awards from the city or township but not the county in which they were located in order to determine Round II eligibility. No rational reason existed, it was alleged, for this city and township *vs.* county distinction. Moreover, it was argued to the District Court that it was irrational to focus solely on the location of the Round I project rather than the area served by the Round I project. It was argued that it was possible to focus on the area served since the Round II regulations themselves focused on the area principally served by a school district in order to determine which general-purpose governmental unit to match it with in order to calculate its Round II allocation. Using the location of a school district project in making Round I deductions but the area served by a school district in making Round II allocations was seen as an unsupportable differentiation.

The District Court entered a temporary restraining order on July 7, preventing the EDA from obligating any Round II funds to Berrien County applicants. On August 18, the District Court dissolved the temporary restraining order and took under advisement a motion for a preliminary injunction. This permitted the EDA to approve a grant to the County and allowed for negotiations among the parties, but the negotiations produced no settlement. On August 29, the EDA filed a motion for summary judgment alleging the plaintiffs had failed to state a claim upon which relief could be granted, basing the motion on its briefs and memoranda of law already filed. On September 12, the Township filed a memorandum in opposition to the EDA's motion for summary judgment. On September 23, the School District filed a motion for summary judgment alleging the Round II regulations and guidelines were arbitrary, unreasonable and capricious. The District Court, which had not ruled on the EDA motion for summary judgment, granted the School District

motion[7] on September 27, only four days after it had been filed and before any response to it had been filed. No hearing was held on the motion. Instead, the District Court decided to "waive" the requirements of Federal Rule of Civil Procedure 56 and its own local court rule that opposing parties be given ten days to respond to motions for summary judgment and to request a hearing. The stated reason for such precipitous action was the need to resolve the case before the September 30 expiration date of the appropriation.

The essence of the District Court opinion issued on September 27 was that the EDA regulations and guidelines, which deducted Round I grants to school districts from Round II targets for the township or city but not the county in which the project was located, were arbitrary and capricious. The Court said it was improper to focus solely on the location of the Round I project when the Round II regulations themselves focused on the area served by the school district to determine Round II planning target allocations. The Court especially emphasized the portion of the legislative history of the 1976 Act which said it was designed to assist "State and local governments in building badly needed public facilities." The Court felt the EDA scheme was not yielding funding of "badly needed public facilities," and the Court particularly expressed disapproval of the Round I grant to Lake Michigan College District. The Court seemed to suggest that any plan which did not produce substantial funding for the Benton Harbor public schools had to be unreasonable since it felt they had the greatest need in the county for new or remodeled buildings.[8] The Court rejected EDA's arguments that administrative ease coupled with the need for quick action justified the challenged aspects of the regulations and guidelines and that the location of

a project was most likely to be the area benefitted by the project.

The order of the District Court permanently enjoined the EDA from distributing any Round II funds in Berrien County, ordered EDA to rescind its award to the County, to reconsider its distribution of funds, and to submit a new proposed allocation to the Court "for review," and further ordered that no Round II funds would escheat to the federal treasury after September 30, 1977. It is this order from which the County and EDA have appealed.

## MOTION TO DISMISS

■ Pursuant to Federal Rule of Appellate Procedure 42(b), the EDA has moved this Court to dismiss its appeal. (No. 77–1690). The EDA argues that its appeal was from an interlocutory order of the District Court granting an injunction and thus permitted by 28 U.S.C. § 1292(a). It claims, however, that when a subsequent order was issued on October 20, 1977, which lifted the injunction against distributing the undisputed portion of the Round II grant to the City (and School District), it realized that since the September 27 order was not a "final order" the better course would be to return to the District Court. The EDA could submit a proposed allocation which it felt would meet that Court's approval and then appeal from the Court's final order approving that proposed allocation of the funds, as authorized by 28 U.S.C. § 1291. It argues this would avoid piecemeal appeals. The School District has opposed this motion to dismiss on the grounds that it is merely an attempt to circumvent the expedited briefing schedule established by this Court.

While motions to dismiss an appeal by an appellant are normally granted, this Court is of the opinion that the circumstances of

---

7. The District Court consolidated the School District's summary judgment motion with the Township's motion for a preliminary injunction so that the relief granted ran in favor of both parties. Since the School District shared in the City's allocation, the City effectively was a party to the motion for summary judgment.

8. The County suggests in its brief that this concern for the Benton Harbor schools comes not from the record in this cause but from the fact that the District Court was simultaneously trying a desegregation case involving these schools and in that case had observed the poor condition of the school facilities.

this case warrant an exception to that general rule.[9] Here only one of two appellants have moved to dismiss and counsel for the EDA noted at oral argument that the EDA's position on the merits was precisely the same as the County's. Dismissing only the EDA's appeal would be a meaningless gesture since we must reach the merits of this action in the County's appeal. Of course, the EDA would get the benefits of a favorable decision or the burden of an unfavorable decision in the County's appeal by way of *stare decisis,* but we feel the better practice on the facts of this case is to keep the EDA in this appeal formally as well as practically.

Therefore, the EDA's motion to dismiss its appeal is denied. We also order that the EDA is to pay all court costs in case No. 77–1690 since it put Appellees to the time and trouble of responding to its motion.

## SUMMARY JUDGMENT

The merits of this cause are presented in the County's appeal, (No. 77–1689), although the following applies fully to the EDA's appeal since we have denied its motion to dismiss. The County first argues that Federal Rule of Civil Procedure 56 and a similar local court rule prohibited granting the School District's motion for summary judgment only four days after it had been filed and before any party had a chance to respond to it or request a hearing. The language of Rule 56(c) supports this argument: "The motion shall be served at least ten days before the time fixed for the hearing."

■ The argument is without merit, however, for two reasons. First, the EDA had moved for summary judgment in its favor almost a month before the School District's motion was filed. Rule 56 has been construed to allow summary judgment to be entered in favor of the non-moving party. *Lowenschuss v. Kane,* 520 F.2d 255, 261 (2d Cir. 1975); 6 Moore's Federal Practice ¶ 56.12. Consequently, the EDA was subject to summary judgment and cannot

complain of lack of ten days notice before granting the School District's motion. Insofar as the County's interests were identical to the EDA's and both were cooperating in defending this lawsuit, it would not be unfair to treat the County similarly.

■ A second reason exists, however, to dispose of the County's claim that summary judgment was improper. This Court has held that the failure to comply with the ten day requirement in Rule 56(c) is subject to the harmless error rule, requiring a showing of prejudice to the party against whom summary judgment was granted in order to warrant reversal. *Thacker v. Whitehead,* 548 F.2d 634, 636 (6th Cir. 1977); *Oppenheimer v. Morton Hotel Corp.,* 324 F.2d 766, 768 (6th Cir. 1963). *See also Ikerd v. Lapworth,* 435 F.2d 197, 203 (7th Cir. 1970); 6 Moore's Federal Practice ¶ 56.14[1], at 56–357. Neither the County nor the EDA has pointed to any prejudice resulting from the District Court failing to comply with the terms of Rule 56. The legal issue had been fully briefed and no material factual disputes existed. We hold that the District Court's failure to follow the dictates of Rule 56 was harmless error.

## THE REGULATIONS AND GUIDELINES

■ Our discussion of the validity of the challenged regulations and guidelines need not be lengthy. We are concerned with regulations and guidelines enacted by an administrative agency pursuant to statutory authorization. Agency action is entitled to a presumption of regularity, although this does not "shield [its] action from a thorough, probing, in-depth review." *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *A.F.S.C.M.E. v. City of Cleveland,* 484 F.2d 339 (6th Cir. 1973). "[T]he ultimate standard of review is a narrow one." *Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. at 824.

---

**9.** The use of the word "may" in the last sentence of F.R.App.P. 42(b) indicates that the

Court of Appeals has discretion in deciding whether or not to dismiss an appeal.

The Supreme Court in *Overton Park* required a reviewing court to utilize a three-part test. First, did the agency act within the scope of its authority? Here EDA acted pursuant to an express statutory directive to enact regulations to administer the 1976 Act and the 1977 Act [10], and was clearly within the scope of its authority.

■ Second, was the actual choice made "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law?" [11] This issue is the crux of this lawsuit. The content of the regulations and guidelines in question and the EDA reasoning behind them has been set out earlier and need not be repeated here. We have thoroughly examined these regulations and guidelines and hold that they are *not* "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." They represent a reasonable attempt by the EDA to allocate public works funds, designed primarily to reduce unemployment, in an equitable manner in a very short time with limited manpower. It is not arbitrary or capricious to deduct Round I school district grants from the city or township, but not the county, in which the project is located, in determining Round II allocations. The EDA could properly consider the differences between these governmental units in geographic area and services rendered in making the distinction that it did. Nor do these regulations and guidelines appear arbitrary or capricious in light of other Round II regulations which focus on the area principally served by a school district instead of just the local governmental unit in which the school is located. Agency regulations need not show the type of internal consistency urged by appellees. The overall scheme is not irrational.

The third question is whether or not the agency followed the necessary procedural requirements. The procedures used in enacting the challenged regulations are not attacked here. This agency action thus meets all three tests set forth in *Overton Park* and is entitled to judicial approval.

The District Court erred in striking down the regulations and substituting its judgment for that of the EDA. *Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. 814; *A.F.S. C.M.E., supra,* 484 F.2d at 346.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied, the judgment of the District Court is reversed and the cause is remanded to the District Court for the purpose of dismissing the complaint. The order of dismissal, however, should include a provision similar to that contained in the order appealed from ordering that no Round II funds shall be allowed to escheat to the United States treasury by virtue of this litigation causing the September 30, 1977, deadline to be missed. With this one limitation preventing funds from escheating to the federal treasury, the EDA shall be at liberty to disburse funds pursuant to its regulations and guidelines. Costs are taxed to Appellees in No. 77–1689 and to Appellant in No. 77–1690.

It is so ordered.