**Jeanne HARRINGTON,**
**Plaintiff-Appellant,**

v.

**VANDALIA–BUTLER BOARD OF EDU-CATION et al., Defendants-Appellees.**

**No. 79–3552.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 11, 1981.

Decided May 22, 1981.

Rehearing and Rehearing En Banc
July 28, 1981.

Barbara Kaye Besser, Charles E. Guerrier, Cleveland, Ohio, Randal S. Bloch, Cincinnati, Ohio, for plaintiff-appellant.

Larry A. Smith, Michael J. Burdge, Dayton, Ohio, for Vandalia Bd.

William H. Thornburgh, Dayton, Ohio, for Clay and Gibson.

Before GEORGE CLIFTON EDWARDS, Jr., Chief Judge, ENGEL and BOYCE F. MARTIN, Jr., Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

In 1974, Jeanne Harrington filed suit in the United States District Court for the Southern District of Ohio against the Vandalia-Butler Board of Education, alleging sex discrimination in employment and seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* After a bench trial in June, 1976, the court found that she had been discriminated against in violation of Title VII and awarded compensatory damages and attorney's fees. *Harrington v. Vandalia-Butler Board of Education,* 418 F.Supp. 603 (S.D.Ohio 1976). On appeal to this Court, the factual finding of discrimination was sustained. However, we reversed the judgment on the grounds that Title VII does not authorize compensatory damages and that the finding of discrimination, standing alone, did not support an award of attorney's fees. *Harrington v. Vandalia-Butler Board of Education,* 585 F.2d 192 (6th Cir. 1978), *cert. denied,* 441 U.S. 932, 99 S.Ct. 2058, 60 L.Ed.2d 660 (1979).

In 1978, while Harrington's appeal was pending in this court, the Supreme Court decided *Monell v. Department of Social Services,* 436 U.S. 658, 96 S.Ct. 2018, 56 L.Ed.2d 611 (1978). That decision overruled *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as the latter held that municipalities are not "persons" subject to liability under 42 U.S.C. § 1983. Immediately after *Monell* was decided, Harrington brought this action against the Board of Education, school principal Ralph Clay, and school superintendent Blutcher P. Gibson, alleging employment discrimination and seeking relief under § 1983.

The defendant Board of Education moved for summary judgment on the ground that the plaintiff's claim was barred by the doctrine of res judicata. On June 7, 1979, the District Court granted this motion, holding that the plaintiff had ample opportunity during the previous litigation to raise a

claim for relief based on the alleged violation of § 1983.

On June 20, 1979, counsel for defendants Clay and Gibson sent the trial judge a letter which requested clarification of the judgment previously entered. The letter asserted that the individual defendants were "privies" to the prior litigation. The District Court responded, by letter of June 28, 1979, that the dismissal of the complaint was a dismissal as to all defendants.

Harrington's first contention on appeal is that the District Court's award of summary judgment in favor of the individual defendants must be reversed because she was not given the notice required by Rule 56(c) of the Federal Rules of Civil Procedure.[1] She argues that even if Clay and Gibson's June 20 letter to the court is deemed a motion for summary judgment, the eight-day interval between the "motion" and the court's letter "granting" that motion was insufficient notice under Rule 56.[2] She also claims that the Board's motion cannot constitute sufficient notice of the individual defendants' request for summary judgment.

■ It is permissible in this circuit for a District Court to enter a summary judgment *sua sponte. Kistner v. Califano,* 579 F.2d 1004, 1006 (6th Cir. 1978). *See generally, Capital Films Corp. v. Charles Fries Productions,* 628 F.2d 387, 390–91 (5th Cir. 1980). However, the Court must still "afford the party against whom summary judgment will be entered advance notice as required by Rule 56 and an adequate opportunity to show why summary judgment should not be granted." *Kistner v. Califano, supra,* at 1006.

■ We hold that the District Court erred in failing to comply with the Rule 56 requirements when it granted summary judgment in favor of Clay and Gibson. Even if the June 20 letter constituted a motion for summary judgment, the court's reply only eight days later deprived appellant of an adequate opportunity to respond. Clay and Gibson argue that appellant was placed on notice of their request for summary judgment by the combination of their answer to the complaint and the Board's motion for summary judgment. This argument is without merit. The individual defendants' answer and the Board's motion may bear on the issue of prejudice, discussed below; they cannot, however, constitute notice that Clay and Gibson sought summary judgment.

■ A District Court's failure to comply with the ten-day requirement of Rule 56(c) is subject to the harmless error rule. *Township of Benton v. County of Berrien,* 570 F.2d 114 (6th Cir. 1978). "[I]t is not reversible error for a district court to grant summary judgment before expiration of the 10 day period if the non-moving party can demonstrate no prejudice." *Hoopes v. Equifax, Inc.,* 611 F.2d 134 (6th Cir. 1979). The recent cases in this Circuit reveal this underlying principle: when the non-moving party has had an opportunity to address the court concerning a motion and fails to object to an expedited decision thereon, or when the legal issue has already been fully briefed and no factual dispute exists, that party has not been prejudiced by the court's noncompliance with Rule 56(c). *See Hoopes v. Equifax, Inc., supra; Township of Benton v. County of Berrien, supra; Thacker v. Whitehead,* 548 F.2d 634 (6th Cir. 1977). See also *Sherrard v. Owens,* 644 F.2d 542 (6th Cir. 1981).

In the present case, there was no hearing on the individual defendants' "motion" or any other opportunity for appellant either to oppose the motion or object to its expedited disposition. Nor had the legal issue already been briefed or argued. Because

1. Rule 56(c) provides, in pertinent part: "The motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing."

2. For the purposes of this appeal, we shall treat the District Court's letter of June 28 rather than the June 7 judgment as the award of summary judgment to the individual defendants. The Board's motion did not mention Clay and Gibson, and there was no indication that they were seeking summary judgment until their counsel's letter of June 20 was sent to the court.

Clay and Gibson were not parties to the Title VII action, they are entitled to summary judgment on res judicata grounds only if they are in privity with the Board. The issue of privity, however, was neither raised by the Board's motion nor addressed in the memoranda supporting and opposing that motion. *See Township of Benton v. County of Berrien, supra,* at 119. We conclude that appellant was prejudiced by the District Court's failure to comply with Rule 56(c). We therefore reverse the summary judgment granted to Clay and Gibson.

Harrington next contends that the defense of res judicata may not be invoked in this case because her present claim under § 1983 could not have been raised at the time the first suit was filed. She argues that the change in the law brought about by *Monell* precludes the availability of the defense. We disagree.

■ It is undisputed that appellant's earlier Title VII action and the present § 1983 suit are based on the same discriminatory acts. When two successive suits seek recovery for the same injury, "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Cemer v. Marathon Oil Company,* 583 F.2d 830, 832 (6th Cir. 1978). *See also Mayer v. Distel Tool & Machine Company,* 556 F.2d 798 (6th Cir. 1977); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209 (6th Cir. 1970). This principle applies even if an intervening decision effects a change in the law which bears directly on the legal theory advanced in the second suit.

The Supreme Court addressed this question in *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). In that case, bondholders had participated in a debt readjustment proceeding, provided for by a federal statute, which resulted in a decree embodying a plan of readjustment. The Supreme Court, in a separate proceeding, subsequently declared the statute unconstitu-

tional. The bondholders then brought a second suit to recover the original debt. The District Court ruled in their favor on the ground that the intervening Supreme Court decision rendered the earlier decree void, and the Court of Appeals affirmed. The Supreme Court reversed and directed dismissal of the complaint, stating that:

> As parties, these bondholders had full opportunity to present any objections to the proceeding, not only as to its regularity, or the fairness of the proposed plan of readjustment, or the propriety of the terms of the decree, but also as to the validity of the statute under which the proceeding was brought and the plan put into effect. Apparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the statute was valid. There was no attempt to review the decree. *If the general principles governing the defense of res judicata are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it. Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195; *Case v. Beauregard,* 101 U.S. 688, 692, 25 L.Ed. 1004; *Baltimore Steamship Co. v. Phillips,* 274 U.S. 316, 319, 325, 47 S.Ct. 600, 601, 604, 71 L.Ed. 1069; *Grubb v. Public Utilities Commission,* 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972.

*Id.* at 375, 60 S.Ct. at 319 (emphasis added.) This reasoning is particularly apposite to the present case. Section 1983 was not "unavailable" to appellant when she filed her Title VII action. She was free to challenge the validity of *Monroe v. Pape* to the extent that it exempted municipalities from the ambit of § 1983. Moreover, it is clear that if she had brought the § 1983 claim initially and lost it on the basis of *Monroe v. Pape,* she would not be entitled to reassert the § 1983 claim in the aftermath of *Monell.* She would be bound by the prior judgment on the merits. That prior judgment is no less binding against her here merely be-

cause she elected not to advance a § 1983 claim in her first action.[3]

This court rejected an argument analogous to appellant's in *In Re Tennessee Central Railway Company*, 498 F.2d 904 (6th Cir. 1974). That case involved railroad companies which, in an earlier action, had unsuccessfully sought an equitable priority over the claims of the government in a railroad reorganization proceeding. *In Re Tennessee Central Railway Co.*, 463 F.2d 73 (6th Cir.), *cert. denied, Louisville & N. R. Co. v. Rodes*, 409 U.S. 893, 93 S.Ct. 119, 34 L.Ed.2d 150 (1972). After a final judgment had been entered in the first proceeding, the Third Circuit held that railroad interline balances (the source of the railroads' claims) were trust funds. *In Re Penn Central Transportation Co.*, 486 F.2d 519 (3rd Cir. 1973), *cert. denied, Chicago and North Western Transp. Co. v. Baker*, 415 U.S. 900, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974). Before the assets were distributed in accordance with the initial judgment, the railroads brought a second action in which they advanced the trust fund theory for the first time. They argued that res judicata was inapplicable to their claim because of the change in the controlling case law. We were not persuaded that such a change had in fact occurred, but went on to observe, citing *Chicot County, supra*, that "The principles of res judicata would govern disposition of this case, even if there had been . . . a change in controlling case law." 498 F.2d at 906.

■ In summary, the thrust of the decisions discussed above is this: generally, a judgment on the merits—even if erroneous—will be deprived of its conclusive effect only if it is vacated, reversed, or set aside on direct appeal. *See Moitie v. Federated Department Stores, Inc.*, 611 F.2d 1267 (9th Cir. 1980); 1B Moore's Federal Practice (2d Ed.) ¶ 0.416[2], p. 2231.

■ We are convinced, therefore, that the change in the law wrought by *Monell*, standing alone, does not preclude the application of res judicata to this case.[4] That

---

. **3.** We do not believe that *State Farm Mutual Automobile Insurance Co. v. Duel*, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812 (1945) requires a contrary conclusion. In that case, an insurance company sued in state court for an injunction to compel the state insurance commissioner to issue it a license. The commissioner's denial of the license was based on the company's noncompliance with a Wisconsin statute. The Supreme Court affirmed the Wisconsin court's rejection of the argument that the statute violated the due process and full faith and credit clauses of the United States Constitution. The Court refused to consider the company's third claim, raised for the first time on appeal, that the statute violated the commerce clause. While the appeal to the Supreme Court was pending, the Court decided for the first time that the fire insurance business was "commerce." *United States v. South-Eastern Underwriters Assoc.*, 323 U.S. 811, 65 S.Ct. 26, 89 L.Ed. 646 (1944). The Court chose to affirm, rather than vacate, the judgment of the Wisconsin Supreme Court, on the theory that the company would not be precluded under Wisconsin law from raising the commerce clause issue in another suit—either because the second suit would be a separate cause of action, or because "it is nevertheless the general rule that res judicata is no defense where between the time of the first judgment and the second there has been an intervening decision

or a change in the law creating an altered situation." 324 U.S. at 162, 65 S.Ct. at 577.

This latter statement apparently contradicts the holding in *Chicot County, supra*, decided five years earlier. Nevertheless, recent Supreme Court decisions assure us that *Chicot County* retains its validity. *See Brown v. Felson*, 442 U.S. 127, 131–33, 99 S.Ct. 2205, 2209–10, 60 L.Ed.2d 767 (1979); *Dobbert v. Florida*, 432 U.S. 282, 297, 97 S.Ct. 2290, 2300, 58 L.Ed.2d 344 (1977). We are convinced that the above quoted dictum in *State Farm Mutual*, to the extent that it undermines the reasoning and result in *Chicot County*, is not an accurate statement of the Supreme Court's general rule in this area. *See* 1B Moore's Federal Practice (2d Ed.) ¶ 0.415, p. 2058, n. 32. We note, however, that *State Farm Mutual* is the fountainhead of numerous decisions which hold that the general principles of res judicata should not be applied if they contravene an overriding public policy or work a manifest injustice. This issue will be addressed below.

**4.** The Second Circuit has reached the same result, albeit without elaboration, in a case similar to this one. *Sinicropi v. Nassau County*, 601 F.2d 60 (2d Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979), involved an appeal from a District Court judgment dismissing a complaint against Nassau County. The complaint alleged sex discrimination in violation of Title VII. The appellant had previ-

conclusion does not, however, end our inquiry, for "This court has held ... that '[n]either collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice.' *Tipler v. E. I. du Pont de Nemours and Co.*, 443 F.2d 125, 128 (6th Cir. 1971)." *Bronson v. Board of Education*, 525 F.2d 344 (6th Cir. 1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976). *See also United States v. LaFatch*, 565 F.2d 81 (6th Cir. 1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); *Ferguson v. Winn Parish Police Jury*, 589 F.2d 173, 176 n.6 (5th Cir. 1979).

We must determine whether the circumstances of this case render the general principles of res judicata inapplicable. In so doing, we look for guidance to our previous decisions.

In *Tipler v. E. I. du Pont de Nemours and Co., supra,* we declined to apply the doctrine of res judicata to a Title VII claim which alleged racial discrimination in employment conditions and a racially motivated discharge. The claimant had previously filed a charge with the NLRB alleging that he had been fired because of his union activities, in violation of §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3). The NLRB found that the claimant had been fired for cause and dismissed the claim. We held that the Title VII claim of racially motivated discharge was not barred by the NLRB's adjudication of the reasons for the discharge. We based that conclusion on the important differences between the purposes and requirements of Title VII and those of the National Labor Relations Act. 443 F.2d at 129. More specifically, we noted that certain racially discriminatory practices that are not forbidden by the NLRA may be invalid under Title VII, and that the NLRB therefore did not adequately consider the factors involved in a Title VII violation. *Id. Cf. Brown v. Felson, supra,* 442 U.S. at 133–34, 99 S.Ct. at 2210–11, (refusal to apply res judicata in determining the dischargeability of debts previously reduced to judgment). *See also Lyght v. Ford Motor Co.*, 643 F.2d 435, at 438 (6th Cir. filed March 9, 1981); *Cooper v. Philip Morris, Inc.*, 464 F.2d 9 (6th Cir. 1972).

Our recent decision in *Shimman v. Frank*, 625 F.2d 80 (6th Cir. 1980) is analogous to *Tipler.* Briefly, in that case we held that the acquittal of a charge under 29 U.S.C. § 530 [5] could not trigger collateral estoppel of proceedings brought under that statute's civil counterpart, 29 U.S.C. § 412.[6] "The

---

ously filed a claim alleging sex discrimination with the New York State Division of Human Rights. The Division found no probable cause and ·dismissed the complaint. The appellant then exhausted all available appeals without success.

In her appeal from the District Court's dismissal of her Title VII action, she argued that the court had erred in ignoring her request to amend her complaint to assert a cause of action under § 1983. As in the case before us, the earlier judgment in *Sinicropi* was obtained before the *Monell* decision, and the second suit was commenced after *Monell.* The Second Circuit stated:

It appears that no formal motion to amend was timely filed. But even if it had been, the § 1983 claim would have raised the same issues that have already been decided in state court, so that the error, if any, in not permitting the amendment was harmless because the § 1983 claim would also be barred by res judicata.

601 F.2d at 61.

**5.** 29 U.S.C. § 530 provides:

*Deprivation of rights by violence; penalty*
It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate ... any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this chapter. Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

**6.** 29 U.S.C. § 412 provides:

*Civil action for infringement of rights; jurisdiction*
Any person whose rights secured by the provisions of this subchapter have· been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall

principal reason is that the burden of proof in a criminal proceeding is far higher than that in a civil proceeding—beyond a reasonable doubt as opposed to a preponderance of the evidence." 625 F.2d at 89.

In *Bronson v. Board of Education, supra,* we addressed the problem of res judicata in the context of school desegregation litigation. For our purposes in the present case, it is sufficient to recall our conclusion that the strong public policy against perpetuating racial segregation in public schools does not necessarily preclude the application of res judicata and collateral estoppel to school desegregation cases. 525 F.2d 349.

Finally, *United States v. LaFatch, supra,* involved an attempt by a corporation to recover $50,000.00 it had paid to Anthony LaFatch. According to the corporation, the money was paid in cooperation with the FBI and under its surveillance. The transaction had provided the basis for an extortion indictment against LaFatch. After the District Court dismissed the extortion charge at the close of the government's case, the corporation filed suit in an Ohio court to recover the $50,000.00. It obtained a verdict against LaFatch for only $15,-000.00. The federal District Court, which had retained custody of the money, found that the Ohio court's judgment was res judicata as to the ownership of the money and granted LaFatch's motion asking for its return. We, however, held that res judicata should not be applied for reasons of overriding public policy. We said that if the corporation's claim that it made the payment in cooperation with the FBI were true, the application of res judicata would violate the public policy of encouraging cooperation with law enforcement authorities in thwarting attempts at bribery and extortion. 565 F.2d at 84.

We find that the differences between Title VII and § 1983 do not mandate the conclusion that res judicata is inapplicable to this case. Whatever other differences exist between the two statutes, for appellant's purpose in this litigation, the only

distinction is the remedy available under each. This difference does not make the application of res judicata "anomalous" in the sense contemplated by *Tipler* and *Shimman. See* 443 F.2d at 129.

Nor do we find the existence of an overriding public policy in this case which would except it from the general principles of res judicata. The policy at issue here—the availability of compensatory damages for violations of Title VII rights—does not, in our view, rise to the degree of overall importance to our society which *Bronson* and *LaFatch* suggest is necessary to avoid the preclusive effect of judgments.

We realize that in the circumstances of this case the doctrine of res judicata seems to work an unfair result. Appellant has established that she was discriminated against; the defendant's "vindication" on the merits was attributable only to the remedial limits of Title VII. *Compare Bronson, supra,* at 349. When she filed her Title VII action, appellant had good reason to believe that she could not successfully sue a school board under § 1983, which permits the award of damages for violations of constitutional and statutory rights. Upon learning from *Monell* that a municipality is now considered a "person" for the purposes of § 1983, appellant filed another suit which raised the § 1983 claim for the first time. There is undoubtedly an element of injustice in the application of res judicata to preclude that claim. However, we believe that the decisions of the Supreme Court and of this circuit, together with the policies underlying the doctrine of res judicata, compel that result.

■ Manifest injustice of the type necessary to except a case from the application of the doctrine is simply not present here. A mere showing that the second litigation, if allowed to proceed, would produce a different result than the first is not a showing of manifest injustice. Because the doctrine of res judicata effects a balance between

be brought in the district court of the United States for the district where the alleged viola-

tion occurred, or where the principal office of such labor organization is located.

competing interests, a certain degree of inequity is inevitable. Res judicata ensures the finality of judicial decisions. It encourages reliance on those decisions, thereby establishing certainty in legal relations. It bars vexatious litigation and promotes economy of judicial time and effort. *Brown v. Felson, supra*, 442 U.S., at 131, 99 S.Ct. at 2209. If the Supreme Court had decided, subsequent to appellant's Title VII suit, that compensatory damages could indeed be awarded under that statute, appellant would nevertheless be barred from reasserting her Title VII claim to collect such damages. That result would be no more or less fair than the one achieved here. The injustice inherent in either result is a necessary by-product of the general rule that judgments are final. In our opinion, that general rule must prevail here.

Finally, appellant contends that the District Court could not base its decision on res judicata grounds because the record of the Title VII action was not received in evidence. This argument is without merit, for it is clear that a court may take judicial notice of its own record of another case between the same parties. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 157 n.6, 89 S.Ct. 935, 942 n.6, 22 L.Ed.2d 162 (1969); *United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977); *Union Mechling Corporation*, 566 F.2d 722, 730 n.12 (D.C.Cir.1977).

The judgment of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.