39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re MILLERS COVE ENERGY COMPANY, INC., Debor.
The OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MILLERS
COVE ENERGY COMPANY, INC., Plaintiff-Appellant,
v.
ELDERS FINANCE, INC., Defendant-Appellee.
 No. 93-6453.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1994.
 
 Before: KENNEDY and JONES, Circuit Judges; and DEMASCIO,* District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, the Official Committee of Unsecured Creditors, filed a declaratory judgment action against defendant Elders Finance, a secured creditor, seeking a ruling that Elders had received payment in full for its post-petition loans and that Elders' security interest in certain certificates of deposit should be dissolved. The Bankruptcy Court ruled against the Committee. The District Court affirmed, and the Committee now appeals. We affirm.
 
 I.
 
 2
 The bankrupt, Millers Cove Energy Company, Inc. had two primary secured creditors, Elders Finance, Inc. and Chicago Fuel and Iron Company, Inc. Between them, Elders and Chicago Fuel made pre-petition loans to Millers Cove of more than $11 million. The loans of both creditors were secured by overlapping liens covering substantially all of the debtor's assets. These liens did not reach to several certificates of deposit, which are the subject of the present action.
 
 
 3
 The bankruptcy petition was initially filed pursuant to Chapter 7 of the Bankruptcy Code, but was later converted to a Chapter 11 proceeding. With the approval of the Bankruptcy Court, Elders made post-petition loans to the debtor amounting to more than $400,000. As the primary consideration for these loans, Elders received a security interest in the certificates of deposit.
 
 
 4
 The sale of the debtor's assets garnered more than $5 million. These proceeds were placed in a special account for distribution to the debtor's creditors. Meanwhile, Elders and Chicago Fuel were engaged in litigation over whose liens had priority. In settlement of their dispute they agreed to a formula for distributing the available cash in the proceeds account. Elders would receive, off the top, an amount equivalent to its post-petition loans plus interest. Elders would then receive 75% of the remaining available cash, while Chicago Fuel would receive 25%.
 
 
 5
 The proceeds in the account were not the only source of revenue available for payment of creditors. The parties also anticipated that other monies would become available, including those from the certificates of deposit. Elders and Chicago Fuel agreed that Elder would receive two-thirds of these future proceeds as they became available, while Chicago Fuel would receive one-third.
 
 
 6
 Elders and Chicago Fuel apparently never asked the Bankruptcy Court to specifically approve this distribution. Rather, they filed a motion with the court requesting that the court order the trustee to pay the available proceeds to Elders and Chicago Fuel "in such proportion as CFI and Elders may direct...." The Bankruptcy Court approved the distribution of funds in that manner.
 
 
 7
 The Unsecured Creditors Committee then filed a declaratory judgment action against Elders, among others, seeking a ruling that, as a result of the distribution, Elders' security interest in the certificates of deposit was released. According to the Committee, the distribution included payment in full to Elders for the post-petition loans.
 
 
 8
 The Bankruptcy Court rejected the Committee's arguments and found in favor of Elders. In the eyes of the Bankruptcy Court, the dispute boiled down to a question of the intent behind both the settlement agreement and the distribution order. The Bankruptcy Court found that no one intended the distribution to release the security interest in the certificates of deposit:
 
 
 9
 [I]t is my conclusion that what has occurred here is that Elders and CFI have settled their dispute regarding a $5,000,000 fund in which neither the debtor nor the Committee had any interest. In fact, there was a shortfall of some $6,000,000 in that fund essential to the satisfaction, in full, of the secured claims of both Elders and Chicago Fuel and Iron. Rather than litigate between themselves further in what was a costly dispute, Elders and Chicago Fuel and Iron determined to resolve the dispute in a mutually satisfactory manner.
 
 
 10
 ....
 
 
 11
 To accord any greater emphasis to the March 25, 1992 distribution order would be to work a $435,000 injustice, in my estimation, on Elders. It was willing to advance this significant amount of funds post-petition to the debtor to keep it afloat. The debtor obviously did not have sufficient funds or assets to satisfy Elders' pre-petition debt. If I am to conclude that the March 25, 1992 order satisfied the post-petition debtor-in-possession claim, in effect, the unsecured creditors are receiving a windfall they did not bargain for or expect. This would be wholly inequitable and I decline to do so.
 
 
 12
 (Joint App. at 375-76). The District Court affirmed the Bankruptcy Court's ruling.
 
 II.
 
 13
 For the reasons articulated in its opinion, the Bankruptcy Court reached the correct conclusion in this matter.
 
 
 14
 In addition to contesting the substance of the Bankruptcy Court's opinion, the Committee also challenges the procedures used by the court in reaching its decision. In its opinion, the Bankruptcy Court took judicial notice of some of the pleadings filed with the court regarding the distribution of the money in the proceeds account. The Committee argues that the court should not have taken judicial notice of these documents. This argument is meritless. As this court has previously declared, "it is clear that a court may take judicial notice of its own record of another case between the same parties." Harrington v. Vandalia-Butler Bd. of Educ., 649 F.2d 434, 441 (6th Cir.1981).
 
 III.
 
 15
 For the foregoing reasons, we AFFIRM the judgment below.
 
 
 
 *
 The Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation