952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nathan L. ZANDERS, Plaintiff-Appellant,
v.
O'GARA-HESS & EISENHARDT ARMORING COMPANY, Defendant-Appellee.
 No. 90-3927.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1992.
 
 Before KEITH, ALAN E. NORRIS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff, Nathan Zanders ("Zanders"), appeals from the September 14, 1990, district court order dismissing his racial discrimination claims brought pursuant to Title VII of the Civil Rights Act. The District Court for the Southern District of Ohio adopted the magistrate's report which found that Zanders' wrongful suspension claim was moot and his wrongful termination claim was barred by tolling the applicable statute of limitations. 42 U.S.C. § 2000(e)-5(e). For the reasons stated below, we VACATE the order and REMAND the case for further proceedings.
 
 I.
 
 2
 O'Gara-Hess & Eisenhardt Armoring Company ("O'Gara") produces armored limousines and similar vehicles used by American and foreign diplomats. O'Gara employed Zanders as a laborer in one of its departments, where its employees partially dismantle vehicles before they are fitted with protective armor or otherwise modified.
 
 
 3
 On September 15, 1988, O'Gara suspended Zanders, an African-American, for one day without pay following an altercation with a Caucasian co-worker, Lamont Mattan. O'Gara also suspended the co-worker for two days, but upon Zander's return to work, he was terminated.
 
 The chronology of events is as follows:
 
 4
 September 14, 1988--Lamont Mattan directed racial epithets and threats of physical violence at Zanders.
 
 
 5
 September 15, 1988--Zanders and Mattan engaged in a physical altercation resulting in their relative suspensions.
 
 
 6
 September 19, 1988--While serving his suspension, Zanders filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"), reporting the suspension and alleging previous discriminatory actions by O'Gara personnel. The EEOC referred the claim to the Ohio Civil Rights Commission ("OCRC").
 
 
 7
 September 20, 1988--O'Gara terminated Zanders' employment pursuant to an alleged layoff of other O'Gara personnel. Zanders, however, received no notice as required by the company's written policy,[1] and was never allowed to return to work following the suspension.
 
 
 8
 September 1988-December 1988--Zanders alleges that he informed the EEOC of the alleged wrongful termination and assumed that the office would append that charge to his wrongful suspension charge.
 
 
 9
 July 12, 1989--O'Gara offered Zanders in a settlement agreement "full monetary relief by paying ... the full amount of wages lost during a one (1) day suspension.... [and] to seal and expunge from the person claiming to be aggrieved's file all references to the suspension."
 
 
 10
 August 1, 1989--Following Zanders' refusal to accept the restitution offered, the OCRC issued a letter indicating plaintiff's refusal to accept the agreement. The EEOC subsequently issued a right to sue letter on the wrongful suspension claim.
 
 
 11
 December 19, 1989--After discovering that the termination charge had not been filed with the EEOC, Zanders filed a formal complaint with the EEOC alleging that his termination was racially motivated. The EEOC refused to investigate the charge because it was filed after the applicable statute of limitations had run.
 
 
 12
 September 14, 1990--Judgment and order was issued by the U.S. District Court for the Southern District of Ohio, adopting the magistrate's recommendation to dismiss the suspension claim for mootness and dismiss the wrongful termination charge because it was procedurally barred by the statute of limitations for EEOC complaints. 42 U.S.C. § 2000e-5(e).
 
 II.
 
 13
 We first turn to the district court's dismissal of Zander's suspension claim for mootness. A case becomes moot when the disputed issues are no longer "live" or the parties have no personal stake in the outcome. Cedar v. Premier Indus. Corp., No. 88-3340, slip op. at 3 (6th Cir. Feb. 28, 1989) (unreported decision, citing United Stated Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980)). Traditionally, this has meant that when the plaintiff receives the relief he seeks, or when it is impossible for the plaintiff to receive full restitution, the case becomes moot. Id. See also, Torres v. Claytor, 25 FEP CASES 998, 1002 (S.D.Cal.1978).
 
 
 14
 O'Gara offered to pay Zanders for the one day suspension and to expunge from his personnel record any reference to the suspension. While O'Gara admitted no wrongdoing, the OCRC classified the proposed settlement as a full legal remedy. The District Court, therefore, dismissed the claim in accordance with the magistrate's recommendation because Zanders would receive all the relief that Title VII permits for his wrongful suspension claim under the proposed settlement terms.
 
 
 15
 Accordingly, Zander's race-based suspension claim is technically moot with regard to his anticipated recovery for the suspension claim, in isolation. However, we conclude that the wrongful termination charge is rooted in the suspension claim, and may imply a continuing course of conduct. Therefore, the suspension claim must be retained if Zanders is to receive a fair hearing with regard to the potentially discriminatory conduct.
 
 III.
 
 16
 Our discussion of Zanders' wrongful termination claim centers around the district court's holding that the applicable EEOC statute of limitations barred its adjudication. The United States Code provides that a plaintiff must file an EEOC charge within three hundred (300) days of the disputed action. 42 U.S.C. § 2000e-5(e). The timely filing of a complaint with the EEOC is a procedural prerequisite to the enforcement of a Title VII action in federal court. See Rasimas v. Michigan Dep't of Mental Health, 714 F.2d 614, 620 (6th Cir.1983) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). However, this is not a jurisdictional requirement; rather it is in the nature of a statute of limitations and may be subject to waiver, estoppel and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).
 
 
 17
 As noted above, we believe that Zander's termination claim is rooted in the suspension claim. Accordingly, the dispositive legal issue is whether the effective date for filing the termination claim relates back to the date when Zanders filed the suspension claim. We review questions of law de novo. See Galbraith v. Northern Telecom, Inc., 944 F.2d 275, 281 (6th Cir.1991). The district court adopted the magistrate's report and recommendation in the order dismissing the case. The magistrate concluded that "neither waiver, estoppel, nor equitable tolling here bar[red] the operation of the EEOC 300-day filing requirement as a limitations device." We disagree.
 
 
 18
 As a matter of law, we believe that the subsequent wrongful termination charge does relate back to the initial suspension claim for two reasons. First, the EEOC was put on reasonable notice of Zanders' termination claim under the circumstances of the case; and therefore, the scope of the EEOC investigation of the suspension claim should have encompassed the wrongful termination allegation. Second, EEOC regulations provide for amendments to timely-filed charges for additional unlawful employment practices that grow out of the subject matter of the original timely-filed charge. Accordingly, we hold that the claim is not subject to the procedural time bar of 42 U.S.C. § 2000e-(5)(e) and discuss each of these reasons seriatim.
 
 A.
 
 19
 Zanders' termination complaint is reasonably within the scope of the EEOC investigation of the timely filed suspension charge. The Sixth Circuit rule for EEOC charges states that a subsequent judicial complaint "is limited to the scope of the EEOC investigation 'reasonably expected' as a result of the discrimination charge filed." Cedar v. Premier Indus. Corp, supra at 4 (citing Farmer v. ARA Servs., Inc., 660 F.2d 1096, 1105 (6th Cir.1981)). The Cedar court further stated:
 
 
 20
 The purpose of the EEOC filing requirement is to initiate the EEOC's investigatory and conciliatory procedures. Only upon the failure of conciliative efforts will a case end up in court at all. Any civil suit grows out of a failure to conciliate and is more closely related to the scope of the investigation than the words of the charge. Thus, courts properly limit the permissible scope of judicial proceedings to the scope of the EEOC investigation.... Accordingly, this court will closely scrutinize the nature of any civil suit before allowing it to proceed to ensure that it asserts a cause of action within the scope of and closely related to the EEOC charges and investigation.
 
 
 21
 Id. at 5. (emphasis added) In Cedar, the panel dismissed a constructive discharge claim brought under Title VII because it had not been timely filed. Additionally, the claim did not have sufficient nexus to a separate and timely claim filed by the same plaintiff. Note, however, that courts have not strictly construed this "scope" requirement to ensure that meritorious claims are not turned aside because of simple procedural technicalities. See id. (citing McBride v. Delta Airlines, Inc., 551 F.2d 113, 115 (6th Cir.1977) (emphasis added).
 
 
 22
 Zanders filed a timely charge of race-based discrimination on September 19, 1988, while serving his suspension. Upon his return to work the next day, O'Gara discharged Zanders from his job without any notice and in violation of written company policy. Given this chronology of events and the direct relationship between the two occurrences, the scope of the EEOC/OCRC investigation of Zanders' wrongful suspension charge must reasonably include the wrongful termination claim. Following the reported suspension, Zanders was never allowed to return to his former position, indicating a continuous course of action by O'Gara. During any subsequent investigation by OCRC officials, Zanders' discharge should have reasonably been discovered and investigated. As Zanders asserts, he could have reasonably assumed that the EEOC and OCRC were investigating both the suspension and discharge claims. Because the wrongful termination claim was reasonably within the scope of the EEOC investigation and was closely related to the charges contained in the complaint, we hold that the EEOC's filing requirement was met.
 
 B.
 
 23
 We also believe that Zanders' claim is not time-barred because the suspension charge and the termination charge are essentially part of the same claim. EEOC regulations provide that: "[a] charge may be amended to cure technical defects or omissions.... [A]mendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. 1601.12(b) (1990). Applying this regulation in Ramirez v. National Distillers Chemical Corp., 586 F.2d 1315 (9th Cir.1978), the Ninth Circuit held that an untimely racial discrimination charge filed subsequent to the original claim was a "technical amendment" to the first claim. Id. at 1319. The circuit court then reversed a district court dismissal after finding that the EEOC had simply failed to process the first charge and the second charge was virtually identical to the first timely-filed claim. Id. The Ninth Circuit noted further that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegation of the EEOC charge including new acts occurring during the pendency of the charge before the EEOC." Id. at 1320.
 
 
 24
 Zanders filed a timely charge of race-based discrimination on September 19, 1988, because of his suspension. Upon his return to work the next day, O'Gara fired him. Zanders asserts that shortly thereafter, he informed the EEOC of his discharge and his belief that O'Gara's action was retaliatory in nature. Neither the EEOC nor the OCRC, with whom Zanders dealt directly, filed an amended or separate charge relating to the alleged wrongful termination; nor was the discharge mentioned in the EEOC's ultimate disposition of the grievance. In December of 1989, Zanders filed a formal charge with the EEOC, alleging wrongful discharge. The EEOC, however, refused to entertain this claim because it was filed over three hundred days after the date of the alleged discrimination.
 
 
 25
 In accordance with the EEOC regulations, the acts of which Zanders complains in the December 1989 termination charge may be retained. The two charges are facially related to one another, and because they indicate one continuous action on the part of O'Gara, the nexus between the charges is very strong. The allegedly unlawful termination charge should relate back to the filing date of the original suspension grievance because the additional act (the alleged wrongful termination) "constitutes [an] unlawful employment practice[ ] directly related to or growing out of the subject matter of the original charge." 29 C.F.R. 1601.12(b) (1990).
 
 
 26
 Alternatively, the Court in Zipes v. Trans World Airlines, Inc, supra, and other Sixth Circuit precedent require the lifting of this procedural time-bar to allow Zanders' wrongful termination claim to proceed. The situation at-bar is quite analogous to that in Ramirez, supra. In Ramirez, the EEOC failed to process a charge on behalf of the claimant and the Ninth Circuit allowed the claim to proceed despite the agency's inaction. Similarly, the EEOC failed to record Zanders' formal charge of wrongful termination, of which it was reasonably on notice, during its "suspension" investigation. Accordingly, the district court must retain this wrongful termination claim to ensure that the claim, if meritorious, is not turned aside because of a procedural technicality.
 
 IV.
 
 27
 For the above stated reasons, we VACATE the district court order to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(6) and REMAND the case for further proceedings not inconsistent with this opinion.
 
 
 28
 ALAN E. NORRIS, dissenting.
 
 
 29
 Because I find no error in the district court's holding that Nathan Zanders' wrongful termination claim, filed well after the 300-day statutory deadline, was time-barred, I respectfully dissent.
 
 
 30
 The district court adopted the magistrate's report and recommendation, which stated that Zanders' claim concerning his one-day suspension was moot because his employer had offered him as settlement the full legal remedy, and that his wrongful termination claim was time-barred. The majority contends that, although the suspension claim is "technically moot," it nonetheless "must be retained" so that Zanders can have a hearing on the wrongful termination charge, which is "rooted in the suspension claim." I do not see how a claim may be retained if it is moot, "technically" or otherwise, and I do not see how, logically, the existence of this moot claim can provide the basis for requiring the district court to hear a claim that is plainly time-barred.
 
 
 31
 The majority provides two rationales for its holding that the December 19, 1989 wrongful termination claim "relates back" to September 19, 1988, the date of the suspension claim. The first is that the termination claim was reasonably within the scope of the EEOC investigation of the suspension claim. The majority asserts that Zanders' discharge "should have reasonably been discovered and investigated" during the EEOC's investigation of the suspension claim, and contends that therefore the timely filed suspension claim prevented the 300-day time limit from barring the subsequent wrongful termination claim. The majority cites Cedar v. Premier Indus. Corp., No. 88-2240, slip op. (6th Cir. Feb. 28, 1989), but that case held that a court must limit the scope of civil proceedings to the scope of the EEOC investigation; it did not hold that the proceedings may be expanded to encompass all that might have or "should have reasonably been" investigated. Furthermore, there is no support for the majority's assertion that the EEOC should have investigated the wrongful termination claim while investigating the suspension claim. Although the majority claims that there is a "direct relationship" between the suspension and the termination, the wrongful termination claim raises issues different from those raised by the suspension claim, and the EEOC neither investigated nor had reason to investigate these issues when addressing the suspension claim. For example, O'Gara claimed that Zanders was simply one of many people permanently laid off due to a downturn in business, an assertion which the EEOC would have had to investigate for a termination claim but not the suspension claim. The requirement that civil proceedings be limited to the scope of the EEOC investigation is not, as the majority contends, a "simple procedural technicalit[y]." Cf. Vinson v. Ford Motor Co., 806 F.2d 686 (6th Cir.1986), cert. denied, 482 U.S. 906 (1987) ("[T]he requirement that a claimant file a charge which identifies the conduct he believes is discriminatory is not a hypertechnical legal prerequisite.... And it is necessary, if the administrative process is to work, that a claimant [identify all conduct he felt was the result of alleged age discrimination]."). As the magistrate's report states: "[B]ecause plaintiff's termination charge was time-barred, no EEOC investigation occurred. Thus, judicial review of that claim is improper, and dismissal is warranted against it."
 
 
 32
 The majority's second rationale is that the termination and suspension charges are "essentially part of the same claim," and that under EEOC regulations, a charge may be amended after the time limit has expired in order to cure "technical defects" or allege additional acts of unlawful employment practice "related to or growing out of the subject matter of the original charge," and such amendments "relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). However, Zanders' suspension charge was never amended. Rather, well after the 300-day time-limit had expired, Zanders filed a separate charge with the EEOC, alleging wrongful termination. Thus, even if Zanders' discharge was part of "one continuous action on the part of O'Gara," as the majority holds, 29 C.F.R. § 1601.12(b) does not apply. In any event, the suspension charge became moot in July 1989, when Zanders was offered the full legal remedy for his suspension charge, so there was nothing left to amend by the time Zanders filed his wrongful discharge claim in December 1989.
 
 
 33
 Furthermore, I am unable to find any evidence in the record to support Zanders' allegations and the majority's assertion that Zanders notified the EEOC of his termination or attempted to add a wrongful termination charge to his claim shortly after being discharged. Because neither the record nor the magistrate's report indicates that such an attempt was made, perhaps the majority is relying upon the allegations in Zanders' pleadings for this recited "fact."
 
 
 34
 Because the suspension claim is moot and the wrongful termination was time-barred, I would affirm the district court's order adopting the magistrate's report and recommendation, and dismiss Zanders' complaint.
 
 
 
 [1]
 O'Gara's written policy states; "Employees who are subject to layoff will be notified as soon as possible, but not less than five working days in advance." Appellant's, Joint Appendix at 5. There are stated seniority and qualification criteria that may have been ignored, as well